SECOND DIVISION
March 4, 2008

No. 1-07-0125



ROBERTO CHAVEZ, )
)
       Plaintiff-Appellant, )   Appeal from the
)   Circuit Court of
   v. )   Cook County.
)
TRANSLOAD SERVICES, L.L.C., a Limited Liability )
Company, MI-JACK PRODUCTS, INC., a Corporation, )
LANCO INTERNATIONAL, INC., a Corporation, )
LIBERTY SALES & LEASING, L.L.C., )
a Limited Liability Company, LIBERTY LEASING, )
L.L.C., a Limited Liability Company, LANGIAN )   Honorable
EQUIPMENT LEASING, L.L.C., a Limited Liability )   Abishi C. Cunningham,
Company, LANGIAN HOLDINGS, L.L.C., a Limited )   Judge Presiding.
Liability Company, and LANGIAN PROPERTIES, )
L.L.C., a Limited Liability Company, CSX )
CORPORATION, and CSX TRANSPORTATION, )
INC., )
)
       Defendants-Appellees. )

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court of Cook County which granted defendant's motion to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2004)).[1]

Plaintiff, Roberto Chavez, was employed by Tandem Staffing Solutions (Tandem), a temporary employment agency. He was hired as a temporary laborer by defendant Transload Services, L.L.C. (Transload), at its Harvey, Illinois, facilities pursuant to an agreement between the two entities. While assisting in the offloading of materials from a rail car, plaintiff was injured

_____

[1] The court's order contained a finding pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), and Transload Services, L.L.C. is the only defendant in this appeal.

when he was struck by an overhead crane.  Subsequently, he filed a negligence complaint against Transload.

Charles Marias, Transload's president, testified during his deposition that it was in the business of providing material handling services for customers to unload and store steel and coordinate delivery to its final destination.  Marias testified that when Transload needed additional labor, it would call Tandem for additional employees, and Tandem would send employees pursuant to that request.  According to Marias, Transload signed off on the hours worked by plaintiff on a daily time sheet, and plaintiff was paid by Tandem after submitting a time ticket indicating the number of hours he had worked.  The time ticket contained multiple terms and conditions, such as: Transload was not allowed to entrust Tandem employees with unattended premises or valuables, and Transload could not use Tandem employees to operate dangerous or unprotected equipment.  Marias testified that Tandem was not reimbursed by Transload for workers' compensation or pension payments.  Marias was not aware of any workers' compensation claim that plaintiff made, and he testified that if Tandem had asked Transload to reimburse Tandem for any of the expenses incurred as part of the workers' compensation claim, it would have refused.

In a pretrial affidavit, Doug Stone, Jr., a supervisor for Transload's operations in Harvey, attested that plaintiff was a temporary employee employed by Tandem and loaned to Transload pursuant to an agreement between it and Tandem.  Stone was plaintiff's supervisor at the Harvey facilities and controlled plaintiff's work, which included plaintiff's work schedule and the project assignments.  While he was employed by Transload, plaintiff performed the same type of work as defendant's other employees, and Stone possessed the right to discharge plaintiff from his employment with Transload for any reason.  During his deposition, Stone stated that plaintiff was given a Transload employee handbook and provided with individualized training.

In his deposition testimony, John Boquist, defendant's assistant secretary and chief

financial officer, testified that plaintiff was not covered as an employee under Transload's workers' compensation policy. According to Boquist, plaintiff received workers' compensation through a carrier that issued coverage to Tandem.

After plaintiff filed his third amended complaint alleging premises liability and negligence, Transload filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2004)). It argued that it was a borrowing employer for the purposes of the Workers' Compensation Act (Act) and thus was protected from plaintiff's tort claim by the exclusivity provision of the Act (820 ILCS 305/5(a) (West 2004)). The trial court granted the motion, finding that Transload was a borrowing employer and plaintiff was its employee within the meaning of the Act.

Plaintiff filed a motion to reconsider, claiming for the first time that he never consented to being Transload's borrowed employee. Attached to this motion was his affidavit in which he maintained that it was not his understanding that he was a Transload employee, and he never consented to being one. The trial court granted Transload's motion to strike the affidavit because it was not newly discovered evidence and denied plaintiff's motion to reconsider.

On appeal, plaintiff contends the trial court erred in granting Transload's motion to dismiss. Plaintiff argues that a central inquiry into whether he was a borrowed employee is whether he consented to being Transload's employee, and there is no evidence that he gave such consent. Plaintiff maintains he had no reason to believe he was a Transload employee because he was paid by Tandem. Moreover, his belief that he was not a Transload employee was shared by Transload based upon the testimony of Charles Marias, Transload's president, that it was not contacted with respect to reimbursing Tandem for any workers' compensation expenses, and according to Marias, if Tandem made such a request, it would refuse to pay it. Accordingly, plaintiff claims that Transload cannot now seek the protection of the exclusive remedy provision of the Act when it did not regard itself as a borrowing employer.

Plaintiff also asserts that he was not a borrowed employee because he did not occupy a status equal to that of Transload's other employees since he was not entrusted with unattended premises or valuables and could not operate dangerous or unprotected equipment while working on Transload's premises. According to plaintiff, these factors create a question of fact as to whether Transload was a borrowing employer and the trial court erred in granting the motion to dismiss.

A section 2-619 motion is similar to a motion for summary judgment and allows for the dismissal of a complaint on the basis of issues of law or easily proven facts. Carroll v. Paddock, 199 Ill. 2d 16, 22 (2002). "Under section 2-619, the defendant admits to all well-pled facts in the complaint, as well as any reasonable inferences that may be drawn from those facts [citation], but asks the court to conclude that there is no set of facts which would entitle the plaintiff to recover." Advocate Health & Hospitals Corp. v. Bank One, N.A., 348 Ill. App. 3d 755, 759 (2004). We apply *de novo* review to the dismissal of a complaint under section 2-619. Carroll, 199 Ill. 2d at 22.

The exclusivity provision of the Act provides immunity to loaning and borrowing employers. Evans v. Abbott Products, Inc., 150 Ill. App. 3d 845, 848 (1986). Section 5(a) of the Act states that an injured employee does not have a common law or statutory right to recover damages from his employer for injury sustained by the employee while engaged in the line of his duty as an employee, other than the compensation provided by the Act. 820 ILCS 305/5(a) (West 2004).

Section 1(a)(4) of the Act provides that when an employer:

"loans an employee to another such employer and such
loaned employee sustains a compensable accidental injury in the
employment of such borrowing employer and where such
borrowing employer does not provide or pay the benefits or

4

1-07-0125

payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several, provided that such loaning employer is in the absence of agreement to the contrary entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this paragraph." 820 ILCS 305/1(a)(4) (West 2004).

Illinois courts have identified several factors in determining whether a borrowed employment relationship existed, such as the terms of any written contract between the two alleged employers and whether the allegedly borrowing employer had the power to discharge the plaintiff. O'Loughlin v. Servicemaster Company Limited Partnership, 216 Ill. App. 3d 27, 34 (1991). The two most important factors in determining whether such a relationship existed are: (1) whether the borrowing employer has the right to control the plaintiff's work and (2) whether the plaintiff gave express or implied consent to a borrowed employment relationship. O'Loughlin, 216 Ill. App. 3d at 35-36.

In Evans, 150 Ill. App. 3d 845, the plaintiff was employed by Personnel Pool, a company that supplied temporary factory workers to the defendant Abbott Products. Evans, 150 Ill. App. 3d at 846. After being assigned to work for the defendant, the plaintiff was injured and subsequently filed a complaint against the defendant. Evans, 150 Ill. App. 3d at 846. The trial court granted the defendant's motion to dismiss, finding that the exclusivity provision of the Act applied to the defendant as a borrowing employer. Evans, 150 Ill. App. 3d at 847. This court affirmed, noting that the defendant was a borrowing employer and had the right to control the plaintiff's work activities and the right to discharge the plaintiff. Evans, 150 Ill. App. 3d at 849. Although the plaintiff argued that a question of fact remained as to whether he could be

5

considered an employee of Abbott, this court held that the existence of an employer-employee relationship is determined under the definition of the rights and duties of loaning and borrowing employers and that, as a matter of law, plaintiff was "clearly *** a loaned employee." Evans, 150 Ill. App. 3d at 849. Furthermore, the plaintiff impliedly consented to the loaned employee relationship by accepting temporary work assignments and accepting the defendant's control and direction as to his work activities. Evans, 150 Ill. App. 3d at 849.

Similarly, in the instant case, plaintiff accepted Transload's employee handbook and received individualized training from Transload. While the time ticket placed some restrictions on his employment, Doug Stone stated that he had the right to discharge plaintiff for any reason, set plaintiff's schedule, and control his work, all of which indicate that Transload exercised a large degree of control over plaintiff's employment. Plaintiff was treated the same as the Transload employees in that he worked the same hours, took breaks as times so designated by Transload, and received instructions from Transload as to how particular work was to be performed. Furthermore, plaintiff impliedly consented to the borrowed employment relationship by accepting the employment assignment with Transload, as well as its control and direction of his work activities. See Evans, 150 Ill. App. 3d at 849. Charles Marias' assertion that Transload would not make any workers' compensation reimbursements was merely his opinion and does not change the fact that Transload was a borrowing employer entitled to the protections of the exclusive remedy provision of the Act.

Plaintiff cites to Ioerger v. Halverson Construction Co., 377 Ill. App. 3d 223 (2007), in support of his argument. In Ioerger, the plaintiff was injured at work and received workers' compensation benefits from a member of a joint venture. Ioerger, 377 Ill. App. 3d at 225. The plaintiff then sued the defendants, the joint venture and the other member of the joint venture, but the defendants' motions for summary judgment were granted after the court ruled that section 5(a) of the Act provided the defendants immunity from common law suits. Ioerger, 377 Ill. App. 3d at

1-07-0125

225-26. This court reversed, noting that the defendants did not bear any responsibility for providing workers' compensation. Ioerger, 377 Ill. App. 3d at 230. The court held that a joint venture or one of its members should not enjoy the Act's immunity without bearing some of the corresponding obligations. Ioerger, 377 Ill. App. 3d at 230.

This case is distinguishable. Ioerger dealt with the applicability of the exclusivity provision of the Act to joint ventures and their members and did not involve the borrowing employee relationship. The instant case, on the other hand, involves such a relationship.

In conclusion, we find that Transload was a borrowing employer and as such was entitled to the protection of the Act's exclusivity provision.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN, P.J., and KARNEZIS, J., concur.