# Illinois Official Reports

## Appellate Court

---

### *Falge v. Lindoo Installations, Inc.*, 2017 IL App (2d) 160242

---

| | |
|---|---|
| Appellate Court Caption | TERRANCE L. FALGE, Plaintiff-Appellant, v. LINDOO INSTALLATIONS, INC., Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-16-0242 |
| Filed | March 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-L-0399; the Hon. Robert G. Kleeman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Donald H. Olek, of Naperville, for appellant.<br><br>Robert H. Fredian, Richard J. Leamy, Jr., and Kristen A. Schank, of Wiedner & McAuliffe, Ltd, of Chicago, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Birkett and Spence concurred in the judgment and opinion. |

¶ 1 Plaintiff, Terrance L. Falge, filed this negligence action in the circuit court of Du Page County against defendant, Lindoo Installations, Inc. (Lindoo), seeking damages for an injury he sustained in a work-related accident. On August 7, 2012, plaintiff was working for Lindoo when a bundle of shelving shifted and trapped his right index finger against a forklift. Plaintiff was employed by Labor Ready Midwest, a temporary staffing agency, and, on the date in question, was assigned by Labor Ready to work for Lindoo. Plaintiff filed for workers' compensation benefits from Labor Ready and filed the present suit against Lindoo. Lindoo filed a motion for summary judgment under the exclusive-remedy provision of the Workers' Compensation Act (Act) (820 ILCS 305/5(a) (West 2012) (employee has no common-law right to recover damages other than those provided by the Act)). Lindoo alleged that it was a "borrowing employer" and plaintiff was a "loaned employee" at the time of the accident and that, therefore, Lindoo was entitled to the protections of the Act's exclusive-remedy provision. See 820 ILCS 305/1(a)(4) (West 2012) (borrowing employers are covered by the Act). The trial court granted Lindoo's motion. On appeal, plaintiff argues that summary judgment was improper because there was a question of material fact as to whether Lindoo was a borrowing employer and thus was entitled to invoke the exclusive-remedy provision. We affirm.

¶ 2 I. BACKGROUND

¶ 3 The following is taken from the pleadings, depositions, and affidavits on file. On August 7, 2012, plaintiff was employed by Labor Ready, which provides permanent and temporary employees to its clients. Once Labor Ready places an employee with a client, Labor Ready expects that the client will supervise, direct, and control the work of that employee. Upon placement, Labor Ready notifies an employee that he or she should report to the client's location and that he or she will be under the supervision and direction of the client upon arrival. Labor Ready provides basic training, but it expects the client to provide further task-specific training to the employee.

¶ 4 Lindoo was a client of Labor Ready. Lindoo installs industrial storage shelves for its customers. On December 8, 2011, Labor Ready and Lindoo entered into a national contract, pursuant to which Labor Ready supplied temporary employees. The national contract provides, in relevant part:

"Customer [Lindoo] understands that Supplier [Labor Ready] will not be providing supervision services for its temporary employees under the Agreement and [Lindoo] shall be responsible for supervising and directing the activities of the temporary employees ***.

Supervision. [Lindoo] understands that [Labor Ready] will not be providing services for its temporary employees under this Agreement and that [Lindoo] shall be responsible for supervision and directing the activities of temporary employees."

¶ 5 In addition to the national contract, Lindoo entered into a contract with Labor Ready's Aurora, Illinois, office on May 4, 2012 (local contract). The local contract provides, in part:

"Customer Responsibilities. [Lindoo] must provide adequate supervision; accurately record all hours worked, including overtime; provide any meal and rest breaks required by law ***.

Safety. Since our workers will be under your supervision, they need to be included in your safety and health program and you are required to comply with safety regulations and provide any necessary site-specific safety training and equipment."

¶ 6    Maria Hernandez, who was the branch manager of Labor Ready's Aurora office, testified at her deposition that plaintiff went to work for Lindoo as Labor Ready's employee. Hernandez stated that both the national and local contracts were in force on the date of plaintiff's accident. Consistent with the terms of the contracts, Labor Ready expected that Lindoo would supervise, direct, and control plaintiff's work. Stefanie Miller, Lindoo's office manager and signatory on the contracts, testified that a Labor Ready temporary employee assigned to Lindoo is under Lindoo's supervision, direction, and control. Miller stated that Lindoo sets the work schedule for Labor Ready employees when they work for Lindoo and that the Labor Ready employees work the same hours as Lindoo's employees. Hernandez and Miller both testified that Lindoo has the right to fire any Labor Ready employee from working for Lindoo.

¶ 7    On the day of the accident, Labor Ready told plaintiff to report to Lindoo and gave him a brief description of the work that he was to perform for Lindoo. When he arrived at Lindoo, plaintiff and five Lindoo employees were assigned to assemble and install industrial storage shelves at a Benjamin Moore & Co. warehouse. Plaintiff testified that there did not appear to be any "direct" supervisors from Lindoo actually directing the work and that he instead took directions from the Lindoo employees in setting up the shelves. It was plaintiff's understanding that he was to follow their directions while he was working for Lindoo. Plaintiff stated that neither Hernandez nor any other Labor Ready personnel was present while he worked for Lindoo that day.

¶ 8    Plaintiff spent the morning erecting cross-members for the shelving units with a Lindoo employee named "Misael," and he followed Misael's directions as they erected the cross-members. Plaintiff took his lunch break at the same time as the other members of the crew. After his lunch break, plaintiff worked with the uprights for the shelves. The uprights were bundled together by three metal bands and were transported with a forklift. The uprights needed to be unbundled by using shears to cut the metal bands. The shears were provided by Lindoo.

¶ 9    Plaintiff was directed to cut the metal bands on the bundles by a Lindoo employee who was operating a forklift. Plaintiff explained that there was a "big communication gap because [the forklift operator] didn't speak English." So, the forklift operator used "a lot of" head nods and pointing. The forklift operator first pointed to the tools and signaled "cut," which plaintiff understood to mean that he wanted plaintiff to pick up the shears. Then the forklift operator pointed to a metal band on the outside of the bundle, which plaintiff took to mean that he wanted plaintiff to cut that band with the shears. After the first one was cut, the operator then pointed again, so plaintiff cut the second band. When plaintiff cut it, the bundle shifted and trapped plaintiff's right index finger against the forklift. As a result, plaintiff suffered a partial amputation of his right index finger. Plaintiff filed a workers' compensation claim against Labor Ready and filed the present suit against Lindoo, alleging that his injuries were proximately caused by Lindoo's negligence.

¶ 10    Lindoo filed a motion for summary judgment, arguing that, as a borrowing employer, it could not be sued for negligence because plaintiff's exclusive remedy was under the Act. The trial court agreed, and it granted Lindoo's motion. Plaintiff timely appeals.

¶ 11                                    II. ANALYSIS

¶ 12        Plaintiff argues that the trial court erred in granting summary judgment in favor of Lindoo because there was a genuine issue of material fact as to whether he was Lindoo's borrowed employee under the Act. We disagree.

¶ 13        Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). "The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists." *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 14. In determining whether a genuine issue of material fact exists, the pleadings, depositions, admissions, and affidavits, if any, must be strictly construed against the moving party and liberally in favor of the nonmoving party. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. A genuine issue of material fact exists where the material facts are disputed or where reasonable persons might draw different inferences from the undisputed facts. *Id.* Although summary judgment can aid in the expeditious disposition of a lawsuit, it is a drastic measure and, therefore, should be allowed only where the right of the moving party is clear and free from doubt. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). A trial court's order granting summary judgment is reviewed *de novo*. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶ 14.

¶ 14        The Act is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990). The Act imposes liability without fault upon the employer and, in return, prohibits common-law suits by employees against the employer. *Id.* Section 5(a), the exclusive-remedy provision, prohibits employees from suing their employers for negligence. See, *e.g.*, *Reichling v. Touchette Regulatory Hospital, Inc.*, 2015 IL App (5th) 140412, ¶¶ 25-26; *Prodanic v. Grossinger City Autocorp, Inc.*, 2012 IL App (1st) 110993, ¶¶ 14-15. Section 1(a)(4) recognizes the concept of borrowing and loaning employers. 820 ILCS 305/1(a)(4) (West 2012). The exclusive-remedy provision extends immunity to borrowing and loaning employers as well. 820 ILCS 305/5(a) (West 2012).

¶ 15        An employee in the general employment of one employer may be loaned to another for the performance of special work and become the employee of the employer to whom he or she is loaned while performing the special service. *A.J. Johnson Paving Co. v. Industrial Comm'n*, 82 Ill. 2d 341, 346-47 (1980). Our supreme court has long recognized the borrowed-employee doctrine as applicable to workers' compensation cases. *Id.* at 347. The borrowed-employee doctrine was specifically incorporated into the Act by the inclusion of section 1(a)(4), which provides, in pertinent part, as follows:

> "Where an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several, provided that such loaning employer is in the absence of agreement to the contrary entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this

- 4 -

paragraph together with reasonable attorneys' fees and expenses in any hearings before the Illinois Workers' Compensation Commission or in any action to secure such reimbursement. \*\*\*

      \*\*\*

An employer whose business or enterprise or a substantial part thereof consists of hiring, procuring or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers shall be deemed a loaning employer within the meaning and provisions of this Section." 820 ILCS 305/1(a)(4) (West 2012).

¶ 16      There is no question that Labor Ready qualifies as a loaning employer. We must determine, however, whether Lindoo qualifies as a borrowing employer. To determine whether a borrowed-employee relationship existed, the inquiry is twofold: (1) whether the special employer had the right to direct and control the manner in which the special employee performed the work and (2) whether there existed a contract of hire between the special employee and the special employer, either express or implied. *A.J. Johnson Paving*, 82 Ill. 2d at 348. Whether a borrowed-employee relationship existed is generally a question of fact, but if the facts are undisputed and permit but a single inference, the question is one of law. *Id.* at 348-49; *Reichling*, 2015 IL App (5th) 140412, ¶ 28.

¶ 17      In workers' compensation cases, the primary factor considered in determining whether a borrowed-employee relationship existed is whether the alleged borrowing employer had the right to direct and control the manner in which the work was to be performed. *Reichling*, 2015 IL App (5th) 140412, ¶ 28. In *A.J. Johnson Paving*, our supreme court found that the following factors supported a determination that the borrowing employer had the right to control and direct the manner in which the employee performed the work: (1) the employee worked the same hours as the borrowing employer's employees, (2) the employee received instruction from the borrowing employer's foreman and was assisted by the borrowing employer's employees, (3) the loaning employer's supervisors were not present, (4) the borrowing employer was permitted to tell the employee when to start and stop working, and (5) the loaning employer relinquished control of its equipment to the borrowing employer. *A.J. Johnson Paving*, 82 Ill. 2d at 349. The court found that, although the employee's skill as an operator permitted him to exercise control over the paving machine and the technical details of the paving operation, it did not preclude a finding that the borrowing employer had the right to control the manner of the work. *Id.* The court also found that it was irrelevant that the employee received his salary from the loaning employer rather than the borrowing employer. *Id.*

¶ 18      Illinois courts have also considered whether the alleged borrowing employer had the right to discharge the employee. See, *e.g.*, *Hastings v. Jefco Equipment Co.*, 2013 IL App (1st) 121568, ¶ 9. Although the borrowing employer need not have the power to dismiss the employee from his general employment, it must have the power to dismiss him from the borrowed employment. *Id.*

¶ 19      The second factor considered in determining whether a borrowed-employee relationship existed is whether there was an express or implied contract of hire between the employee and the alleged borrowing employer. *A.J. Johnson Paving*, 82 Ill. 2d at 348. "In order to establish such a contract there must be at least an implied acquiescence by the employee in the

relationship." *Id.* at 350. Implied acquiescence to an employment relationship exists "where the employee knows that the borrowing employer generally controls or is in charge of the employee's performance." *Prodanic*, 2012 IL App (1st) 110993, ¶ 17. "Furthermore, the employee's acceptance of the borrowing employer's direction demonstrates the employee's acquiescence to the employment relationship." *Id.*

¶ 20    In *Chaney v. Yetter Manufacturing Co.*, 315 Ill. App. 3d 823 (2000), the plaintiff worked for a temporary agency. The temporary agency handled its employees' payroll, tax withholding and reporting, and insurance, and it provided workers' compensation coverage for its employees. *Id.* at 825. When the plaintiff arrived at the defendant's facility, the defendant supervised and directed her work activities. *Id.* at 829. The defendant told her to perform specific tasks, and no one from the temporary agency was involved with or consulted concerning any task she performed while working at the defendant's facility. *Id.* The defendant could not discharge her from her employment at the temporary agency, but it could dismiss her from service at its facility. *Id.* The appellate court affirmed summary judgment in favor of the defendant, finding that the defendant controlled the plaintiff while she was working at its facility. *Id.* at 829-30. The court held that the defendant's right to dismiss the plaintiff from service at its facility and to send her back to the temporary agency was sufficient to satisfy the discharge element of the control test. *Id.* The court also found that the plaintiff impliedly agreed to the borrowed-employee relationship where there was no dispute that she knew she was working for the defendant but through the temporary agency. *Id.*

¶ 21    In *Chavez v. Transload Services, L.L.C.*, 379 Ill. App. 3d 858 (2008), the plaintiff argued on appeal that the trial court erred in granting the defendant's motion to dismiss because there was a question of fact as to whether he was the defendant's borrowed employee. *Id.* at 861. In holding that the defendant was a borrowing employer, entitled to the protections of the exclusive-remedy provision of the Act, the court noted that the plaintiff accepted the defendant's employee handbook and received individualized training from the defendant; that the defendant had the right to discharge the plaintiff for any reason, to set his schedule, and to control his work, all of which indicated that the defendant exercised a large degree of control over his employment; and that he was treated the same as the defendant's employees in that he worked the same hours, took breaks at times designated by the defendant, and received instructions from the defendant as to how to perform particular tasks. *Id.* at 863. The court also found that the plaintiff impliedly consented to the borrowed-employee relationship by accepting the employment assignment with the defendant, as well as the defendant's control and direction of his work activities. *Id.*

¶ 22    In the present case, construing the evidence strictly against Lindoo and liberally in favor of plaintiff, it is clear from the undisputed material facts that a borrowed-employee relationship existed between plaintiff and Lindoo at the time of his accident. Plaintiff testified at his deposition that there did not appear to be any "direct" supervisors from Lindoo who were actually directing the work. However, he testified that he was taking directions from Lindoo's employees when he was setting up the shelves at the warehouse and, specifically, when he was injured. Although plaintiff argues that it was difficult to understand directions because many of Lindoo's employees spoke Spanish, plaintiff testified that he understood what he was supposed to do through the use of hand gestures and other nonverbal communication. Also, Lindoo set plaintiff's work schedule, controlled when he took his breaks, and provided him with the tools to perform the tasks assigned by Lindoo on the date of the accident.

¶ 23     Moreover, the contract between Labor Ready and Lindoo states that all temporary employees provided to Lindoo by Labor Ready were under Lindoo's supervision and direction. Lindoo also had the right to discharge plaintiff from his employment with Lindoo. It is inconsequential who actually was paying plaintiff for his services. See, *e.g.*, *A.J. Johnson Paving*, 82 Ill. 2d at 349 (the court did not "deem relevant" the fact that the plaintiff was paid by the loaning employer rather than the borrowing employer; "[t]he mere fact that the employee does not receive his wages from the [borrowing] employer will not defeat the finding of a loaned-employee situation"); *American Stevedores Co. v. Industrial Comm'n*, 408 Ill. 449, 455-56 (1951) (holding that the case came within the borrowed-employee doctrine as a matter of law where Frigidaire procured temporary workers through Stevedores but Stevedores was merely the agency that picked the workers and the conduit through which they were paid); *Chaney*, 315 Ill. App. 3d at 828-30 (although temporary employment agency paid plaintiff, handled her unemployment insurance, social security, and tax deductions, and carried malpractice, general liability, and workers' compensation insurance, it was undisputed that borrowing employer supplied temporary employment agency with the number of hours plaintiff worked each day and temporary employment agency billed borrowing employer for those hours at an agreed-upon rate, which included reimbursement for those payroll expenses plus a profit, suggesting that temporary employment agency was merely a conduit through which plaintiff was paid).

¶ 24     Plaintiff attempts to establish that while he was working for Lindoo he was still under the supervision of Labor Ready because Hernandez would, from time to time, call on clients to see how things were going. Plaintiff points out that Hernandez was to be informed if there were any problems with a temporary employee's placement. However, these customer service actions by Labor Ready did not establish any form of supervision over plaintiff's work for Lindoo. There is no evidence that anyone from Labor Ready was involved with or was consulted about any task plaintiff performed for Lindoo. See *Chaney*, 315 Ill. App. 3d at 829.

¶ 25     As to whether an express or implied agreement existed between plaintiff and Lindoo, an employee's consent to the employer-employee relationship may be implied in the context of a business like a temporary employment agency. *Id.* In *Chaney*, there was no dispute that Chaney knew that she was working for the defendant through the temporary agency. The court found that, under those circumstances, Chaney impliedly agreed to the loaned-employee relationship. *Id.* at 829-30. The same facts are present here, where plaintiff impliedly consented to a loaned-employee relationship because the testimony demonstrates that he was aware that he was working for Lindoo through Labor Ready and that he accepted the temporary employment assignment.

¶ 26     The temporary agency cases finding a borrowed-employee relationship (*Reichling*, *Chaney*, *Chavez*) are consistent with the trial court's ruling here. The cases relied upon by plaintiff, namely *Gundich v. Emerson-Comstock Co.*, 21 Ill. 2d 117 (1960), *Hastings v. Jefco Equipment Co.*, 2013 IL App (1st) 121568, *Palomar v. Metropolitan Sanitary District of Greater Chicago*, 225 Ill. App. 3d 182 (1992), and *Casey v. E.J. Cattani & Son Gravel*, 133 Ill. App. 3d 18 (1985), are distinguishable. None of those cases involved a temporary agency that placed employees to work for employers pursuant to a contract that spelled out the employers' supervisory responsibilities.

¶ 27     Because the undisputed material facts demonstrate that Lindoo directed and controlled plaintiff's work and that plaintiff consented to the borrowed-employee relationship with

Lindoo, there is no genuine issue of material fact as to whether Lindoo was a borrowing employer. Therefore, the trial court properly determined, as a matter of law, that plaintiff was Lindoo's borrowed employee at the time of his accident and that, thus, his negligence action against Lindoo was barred by the exclusive remedy provision of the Act. Accordingly, the trial court properly granted summary judgment in favor of Lindoo.

¶ 28                                        III. CONCLUSION
¶ 29        For the preceding reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 30        Affirmed.