# Illinois Official Reports

## Appellate Court

---

### *Tuna v. Airbus, S.A.S.*, 2017 IL App (1st) 153645

---

| | |
|---|---|
| Appellate Court Caption | FUZZY TUNA and JENAYA McKAY, Plaintiffs-Appellants, v. AIRBUS, S.A.S., a Corporation, and NORTHROP GRUMMAN GUIDANCE and ELECTRONICS COMPANY, INC., Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-15-3645 |
| Filed | June 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 09-L-11795, 10-L-5420, 10-L-11315, 10-L-11317, 13-L-12191; the Hon. James N. O'Hara, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Floyd A. Wisner and Alexandra M. Wisner, of Wisner Law Firm, P.C., of Geneva, for appellants.<br><br>Stanley V. Boychuck and Catherine Basque Weiler, of Swanson Martin & Bell, LLP, of Chicago, Thad T. Dameris (*pro hac vice*) and Christopher M. Odell (*pro hac vice*), of Arnold & Porter, LLP, of Houston, Texas, and David J. Weiner (*pro hac vice*), of Arnold & Porter, LLP, of Washington, D.C., for appellee Airbus, S.A.S. |

Michael J. Merlo, Linda J. Schneider, and Donald G. Machalinski, of Merlo, Kanofsky Gregg & Machalinski, Ltd., of Chicago, for other appellee.

Panel          JUSTICE LAVIN delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     This matter arises from injuries sustained by plaintiffs Fuzzy Tuna and Jenaya McKay when an aircraft designed by defendant Airbus, S.A.S., and operated by Qantas Airways, experienced two sudden pitch-down movements on October 7, 2008. Defendant Northrop Grumman Guidance and Electronics Company, Inc., designed the aircraft's air data inertial reference unit. Although plaintiffs are flight attendants from New Zealand, the aircraft was over the Pacific Ocean when the incident occurred.

¶ 2     Several individuals' negligence and products liability actions were consolidated in the circuit court of Cook County.[1] While defendants argued that New Zealand law precluded compensatory damages, defendants did not contest liability. In contrast, plaintiffs argued that New Zealand law permitted courts outside of New Zealand to award its citizens compensatory damages and that, absent a meaningful difference in the laws of the two jurisdictions, Illinois law applied. Agreeing with defendants' position, the circuit court entered summary judgment in their favor, albeit with acknowledged equivocation. Eventually, plaintiffs filed a petition to vacate the summary judgment order pursuant to section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)), arguing that new evidence supported their position that New Zealand law did not preclude compensatory damages in this case. The circuit court denied that petition without an evidentiary hearing. We now affirm the judgment.

¶ 3                               I. BACKGROUND
¶ 4                           A. Underlying Proceeding
¶ 5     As indicated, defendants filed a "Motion for Application of New Zealand Law and Summary Judgment" in the underlying action.[2] The motion alleged that while Illinois permitted recovery for a wide array of damages, New Zealand's no fault system of compensation barred damage claims for personal injuries. Thus, a conflict existed between the laws of those jurisdictions. Additionally, New Zealand law, rather than Illinois law, governed

---

[1]This case apparently found its way to the circuit court of Cook County because Motorola, Inc., an Illinois resident, was originally a defendant in this case. The claims against Motorola, Inc., and other parties named as defendants were later dismissed. Similarly, claims other than those filed by plaintiffs Tuna and McKay were ultimately dismissed.

[2]In accordance with an agreement between the parties, our record on appeal does not include the entire record in the underlying action.

damages because New Zealand had the most significant relationship with this case. Specifically, plaintiffs lived there, received treatment there, and received compensation for injuries and lost earnings under the New Zealand Accident Compensation Act 2001 (NZACA). Furthermore, plaintiffs and their employers had contributed financially to the New Zealand Accident Compensation Corporation (ACC), the governmental entity responsible for administering the NZACA. In contrast, Illinois had no relationship to plaintiffs' claims. Because New Zealand law precluded plaintiffs from recovering further damages, defendants argued they were entitled to summary judgment. In support, defendants provided a declaration on New Zealand law prepared by two New Zealand attorneys: Rosemary Tobin and Elsabe Schoeman.

¶ 6    According to the declaration, New Zealanders gave up the right to sue for personal injury damages in exchange for receiving benefits without consideration of fault. The NZACA did not eliminate the availability of a common law action or exemplary damages, but did eliminate compensatory damages.[3] Section 317(1) of the NZACA states as follows:

"No person may bring proceedings independently of this Act, whether under any rule of law or any enactment, *in any court in New Zealand*, for damages arising directly or indirectly out of—

(a) personal injury covered by this Act; or

(b) personal injury covered by the former acts." (Emphasis added.) New Zealand Accident Compensation Act 2001 § 317(1)(a), (b) (eff. Sept. 19, 2001).

Defendants' experts also cited Australian case law, finding that section 317's reference to New Zealand courts merely reflected that New Zealand lacked authority to dictate to courts of foreign jurisdictions. The declaration concluded that plaintiffs were entitled to benefits under the NZACA and, in turn, were precluded from seeking compensatory damages in court.

¶ 7    In response, plaintiffs argued that defendants failed to demonstrate a conflict in laws existed. Specifically, section 317, by its own terms, did not apply to a legal action which was commenced outside of New Zealand with respect to an accident outside of New Zealand. Conversely, section 321 of the NZACA actually contemplated that proceedings for damages would be brought outside of New Zealand. Thus, there was no conflict between New Zealand and Illinois law. In support of their position, plaintiffs attached a declaration of New Zealand attorneys David John Goddard and Bruce Andrew Corkill, who found as follows:

"[I]t is clear as a matter of New Zealand law that s 317 does not prevent a common law claim before an overseas court by a person who suffers personal injury sustained in an air accident outside New Zealand, where the claim relates to conduct by one or more defendants outside New Zealand. Indeed in some circumstances a person who suffers such an injury, and who is entitled to cover under the Act by virtue of their residence in New Zealand, may be required to pursue common law proceedings outside New Zealand."

More specifically, a New Zealand court interpreting the statute would consider its language in conjunction with other factors. Although a New Zealand court could find that section 317 would be undermined by double recovery in an overseas court, section 321 allowed the ACC to recover paid benefits from an award of damages. As a result, the NZACA would be advanced

---

[3]Plaintiffs' pleadings apparently did not seek exemplary damages.

by allowing claims for compensatory damages to be pursued outside of New Zealand. While plaintiffs' experts doubted that an appellate court in New Zealand would employ an exclusively text-driven approach, such court would nonetheless find compensatory damages were available from defendants outside of New Zealand who had not financially contributed to New Zealand's accident compensation scheme.[4]

¶ 8 In reply, defendants attached a supplementary declaration from their experts, confirming their "original view that section 317 applies in a foreign court when New Zealand law is the *lex causae*." See Black's Law Dictionary (10th ed. 2014) (defining "*lex causae*" as "[t]he legal system that governs a dispute").

¶ 9 On October 9, 2014, the circuit court granted defendants' motion to apply New Zealand law and entered summary judgment in their favor. The court also found there was no just reason to delay enforcement or appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010).[5] Plaintiffs filed a timely notice of appeal on November 6, 2014 (No. 1-14-3460).

¶ 10                            B. Appeal From Summary Judgment Order

¶ 11 On April 2, 2015, while plaintiffs' interlocutory appeal was pending, the court vacated the summary judgment order *sua sponte* and requested additional briefing on the choice-of-law issue. Four days later, plaintiffs moved in the circuit court to voluntarily dismiss their appeal pursuant to Illinois Supreme Court Rule 309 (eff. Feb. 1, 1981) (permitting the circuit court to dismiss an appeal before the record has been filed on appeal).

¶ 12 In response, defendants argued that the April 2, 2015, order was void because plaintiffs had already filed a notice of appeal, divesting the circuit court of jurisdiction. Defendants stated, "[i]f Plaintiffs voluntarily dismiss their appeal, they cannot then file a post-judgment motion to vacate, nor can the Court grant such relief." Additionally, plaintiffs would not be able to satisfy the requirements of section 2-1401 and the revestment doctrine would not restore the circuit court's jurisdiction. Furthermore, plaintiffs would not be able to file a second notice of appeal from the summary judgment order. "For these reasons, Defendants wish the Court to be fully advised in the premises before granting Plaintiffs' motion to voluntarily dismiss the appeal. Defendants do not oppose Plaintiffs' motion but will oppose any extra-jurisdictional efforts to vacate or modify the October 9 Order."

¶ 13 On June 11, 2015, the circuit court dismissed plaintiffs' appeal pursuant to Rule 309. The court realized that it lacked jurisdiction on April 2, 2015, but urged petitioners to file a section 2-1401 petition. Although Rule 309 requires that the court clerk forward a copy of the dismissal order to the reviewing court (Ill. S. Ct. R. 309 (eff. Feb. 1, 1981)), it appears that the order was not forwarded, as this court purported to dismiss the same appeal for want of prosecution two months later.

---

[4] We also note that the declaration contradicted the response's assertion that the NZACA extinguished the common law tort action.

[5] At that time, other individuals' claims were still pending.

¶ 14                                    C. Section 2-1401 Proceedings

¶ 15        Meanwhile, plaintiffs' attorney Floyd Wisner, through his referring counsel in Australia, procured a letter purporting to set forth the ACC's position on actions in foreign courts. The ACC wrote the letter to Wisner's referring counsel on February 11, 2015, and, ultimately, referring counsel forwarded it to Wisner. The letter, authored by the ACC's legal clerk, Aric Shakur, stated, "[w]e can confirm that the Act does not prevent New Zealanders from bringing civil claims for personal injury in overseas courts. This includes those who are receiving cover from the [ACC]." The letter similarly stated that while section 317(a) of the NZACA barred claimants from commencing actions for personal injury damages covered by the NZACA within New Zealand courts, the NZACA did not prevent claimants from commencing such legal actions overseas. Furthermore, the NZACA empowered the ACC "to recover repayment of the client's entitlement should they receive damages or settlement."

¶ 16        On June 26, 2015, plaintiffs filed a section 2-1401 petition to vacate the summary judgment order, all the while maintaining that the court had jurisdiction to vacate that order on April 2, 2015. Additionally, the ACC's letter and the court's April 2, 2015, order constituted new evidence in support of their petition. Plaintiffs argued that this new evidence would have affected the court's summary judgment order. Although plaintiffs exercised due diligence to obtain a statement from the ACC, they did not receive one until after the summary judgment order was entered. Once received, plaintiffs "had to consider whether to pursue the merits of their appeal without the letter from the ACC or to dismiss the appeal and file a motion pursuant to § 2-1401. While plaintiffs were considering their options, this Court entered its Order on April 2, 2015." Plaintiffs attached to their motion the order entered on April 2, 2015, the ACC's letter, and an affidavit submitted by Wisner.

¶ 17        Upon the circuit court's request, Wisner filed a supplemental affidavit, expounding his efforts to contact the ACC. Within two weeks of defendants' summary judgment motion, Wisner personally called the ACC three times to inquire about the NZACA's application to this case, but his messages were not returned. In February 2014, Wisner's referring counsel sent two letters to the ACC, seeking an acknowledgment of this action and inquiring whether the ACC would seek recovery of the ACC's payments to plaintiffs from any award they received in the present action. A week later, the ACC sent referring counsel a letter declining to determine whether it would recover payments from any Illinois judgment until plaintiffs actually received funds as a result. The ACC's letter was sent to Wisner three days later but he was unable to reach the letter's signatory by phone.

¶ 18        Approximately one month after the summary judgment order was entered, the New Zealand Herald published an article related to this specific litigation. When asked to comment on this case, ACC Minister Nikki Kaye stated that the NZACA did not prevent New Zealanders from taking legal action overseas. Plaintiff Tuna brought the article to Wisner's attention, leading Wisner to seek confirmation of the ACC's position. Referring counsel sought a formal letter in support of Minister Kaye's statement. Following email correspondence in January 2015, the ACC finally responded the next month. Wisner attached to his supplemental affidavit the aforementioned news article and correspondence.

¶ 19        Defendants responded that plaintiffs' allegations were insufficient and the supporting exhibits would not have altered the judgment. Specifically, the ACC's letter was cumulative and did not show a connection between plaintiffs' claims and Illinois. The letter was also nonbinding because it was signed by a legal clerk instead of a solicitor. Additionally, a

supplementary declaration from defendants' experts stated that the letter did not conflict with or alter their original opinion, was silent on the choice-of-law matter, and failed to specifically address whether section 317 applies when New Zealand law is the *lex causae*. The experts further stated that legal clerks are not licensed attorneys in New Zealand.

¶ 20 In reply, plaintiffs argued that the ACC was an unbiased source and its letter was not cumulative. Additionally, the letter supported their position, regardless of whether it was authored by a legal clerk. Furthermore, although the ACC's letter merely referred to bringing actions in other jurisdictions, the letter implicitly contemplated a right to obtain damages because no one would bring an action outside New Zealand if damages were unavailable.

¶ 21 At a hearing on November 12, 2015, the circuit court initially stated that it was entering an order granting plaintiffs' petition. Subsequent discussions revealed, however, that the court had not seen the most recent expert declaration provided by defendants. Accordingly, the court entered a continuance instead.

¶ 22 Two weeks later, the circuit court denied plaintiffs' petition. The court found that Wisner established due diligence in obtaining the ACC's letter, but the most recent declaration of defendants' experts showed it would be improper to vacate the summary judgment order. The court gave "substantial weight" to the declarations of defendants' experts, who believed the ACC letter was consistent with their initial opinion. Additionally, the court noted that New Zealand would not recognize the legal clerk who wrote the ACC's letter as an expert. "This Court, in its sound discretion, finds that the ACC letter does not constitute 'new evidence' such that Petitioners would endure an unfair, unjust or inequitable dismissal."

¶ 23                                      II. ANALYSIS

¶ 24 On appeal, plaintiffs assert that the circuit court erroneously denied their petition to vacate the summary judgment order pursuant to section 2-1401, arguing that it set forth new evidence supporting a meritorious defense. Specifically, they contend that the ACC's letter supports their interpretation of the NZACA and, in turn, their assertion that Illinois law applies to the matter of damages. While arguments based on the ACC's letter *are* properly before us, the parties' briefs compel us to specify *what is not*. This appeal is not a vehicle to raise every argument that could have been raised in plaintiffs' prior appeal from the summary judgment order, as that judgment became final when plaintiffs decided to dismiss their appeal.

¶ 25 It is well settled that the filing of a notice of appeal divests the circuit court of jurisdiction. *Dragon Construction, Inc. v. Parkway Bank & Trust*, 287 Ill. App. 3d 29, 34-35 (1997). Thus, the circuit court lacked jurisdiction to vacate the summary judgment order on April 2, 2015, as an appeal was already pending. Additionally, defendants' counsel specifically warned of the consequences of dismissing their appeal, but plaintiffs did not heed that warning.

¶ 26 In the underlying action, the circuit court entered a Rule 304(a) finding with the summary judgment order. Where a party fails to file a notice of appeal within 30 days of a finding pursuant to Rule 304(a), the judgment becomes final and prevents litigants from challenging that judgment in an appeal from a later order. *Koenig & Strey GMAC Real Estate v. Renaissant 1000 South Michigan I, LP*, 2016 IL App (1st) 161783, ¶¶ 22-23; *City National Bank of Murphysboro v. Vancloostere*, 230 Ill. App. 3d 723, 724-25 (1992) (finding that the defendants' contention was not before the reviewing court where the issue was subject to an earlier order entered with a Rule 304(a) finding but the defendants did not file a notice of appeal from that order). Here, plaintiffs initially filed a timely notice of appeal, but they

voluntarily dismissed it. When an appeal is dismissed under Rule 309, it is as though a notice of appeal was never filed. *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 969 (2010). Accordingly, the summary judgment order became final because plaintiffs did not appeal from that judgment within 30 days of its entry.

¶ 27 Contrary to plaintiffs' assertion, we further note it is well settled that litigants may simultaneously pursue an appeal and a section 2-1401 petition. See *People v. Partee*, 125 Ill. 2d 24, 35 (1988) (observing that "[s]ince a collateral attack upon a judgment is a case separate and apart from the case in which the judgment has been attacked, *** the availability or pendency of a direct appeal will not affect the ripeness of a claim for *** post-judgment relief"). The two routes are parallel. *Cruz v. Columbus-Cuneo-Cabrini Medical Center*, 264 Ill. App. 3d 633, 642 (1994). Thus, we reject any suggestion that plaintiffs were required to choose between pursuing their interlocutory appeal and filing a section 2-1401 petition.

¶ 28 We also reject plaintiffs' contention that dismissal of their appeal revested the circuit court with jurisdiction. The briefs on appeal have discussed two distinct legal concepts which, regrettably, both speak to a court being "revested" with jurisdiction. First, under the revestment doctrine, the circuit court is revested with jurisdiction where both parties support setting aside the judgment. *People v. Bailey*, 2014 IL 115459, ¶ 25. That mutual consent is clearly not present here, making that doctrine inapplicable. Second, plaintiffs note certain case law where the circuit court was deemed to have been revested with jurisdiction upon the dismissal of an appeal pursuant to Rule 309. See *Rickard v. Pozdal*, 31 Ill. App. 3d 542, 543-46 (1975) (where the circuit court dismissed the appeal, it was "revested" with jurisdiction to vacate the judgment within 30 days of the original order); see also *Bernstein & Grazian, P.C.*, 402 Ill. App. 3d at 969-70 (finding, after an appeal was dismissed under Rule 309, that the circuit court, rather than the appellate court, had jurisdiction over a motion to vacate the order dismissing the appeal). That being said, it does follow that a dismissal under Rule 309 revests the circuit court with jurisdiction to substantively alter a final judgment more than 30 days after its entry. See *In re Marriage of Allen*, 343 Ill. App. 3d 410, 412 (2003) (observing that the court loses jurisdiction to amend its judgment more than 30 days from entry). Because the summary judgment order and Rule 304(a) finding were entered more than 30 days before plaintiffs dismissed their appeal, that judgment became final.

¶ 29 As stated, we may consider contentions related to the ACC's letter, *i.e.*, the new evidence forming the basis of plaintiffs' section 2-1401 petition. The ACC's letter has no bearing, however, on plaintiffs' arguments regarding *depecage* and Illinois public policy, which are not before us.[6] See *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 161 (2007) (defining *depecage* as "the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis"). Consideration of those contentions would transform this proceeding from the appeal of a section 2-1401 disposition into an improper second appeal from the summary judgment order. Having separated the pertinent wheat from the irrelevant chaff, we turn to section 2-1401.

---

[6]As will later discuss, the circuit court's April 2, 2015, order vacating the summary judgment order has no bearing on the interpretation of the NZACA or the choice-of-law issue.

¶ 30                                    Section 2-1401

¶ 31          Section 2-1401 constitutes a comprehensive procedure for authorizing a circuit court to vacate or modify final orders or judgments in criminal and civil proceedings more than 30 days after their entry. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31; *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220 (1986). Additionally, a section 2-1401 petition can raise either factual or legal challenges to a final order. *Warren County*, 2015 IL 117783, ¶ 31. With respect to factual challenges, the purpose of such petitions is to inform the court of factual matters which were not known at the time of judgment but that would have affected the judgment had they been known. *Lubbers v. Norfolk & Western Ry. Co.*, 105 Ill. 2d 201, 210 (1984). Furthermore, the cumulative nature of newly discovered evidence will not always lead to the denial of relief under section 2-1401. Compare *id.* at 213 (rejecting the respondents' contention that cumulative evidence could not be the basis for relief where the new evidence, when combined with the old, could show a cause of action) and *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 284 (1982) (observing in a products liability case that "several similar opinions may add up to a design defect"), with *Malek v. Lederle Laboratories*, 152 Ill. App. 3d 493, 502 (1987) (finding that cumulative evidence of an inconclusive nature would not have prevented the judgment from being entered). A petition must set forth allegations that would show (1) a meritorious defense or claim, (2) due diligence in presenting that defense or claim, and (3) due diligence in filing the petition for relief, although a court may relax due diligence standards in light of equitable considerations. *Warren County*, 2015 IL 117783, ¶¶ 35, 37, 47, 51.

¶ 32          An action under section 2-1401 constitutes a civil proceeding subject to the usual rules of civil practice. *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 23; *Ostendorf*, 89 Ill. 2d at 279. Thus, section 2-1401 petitions are fundamentally complaints that invite responsive pleadings. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). Following the filing of a section 2-1401 petition, the circuit court may (1) dismiss the petition, (2) grant or deny the petition solely on the pleadings or enter summary judgment, or (3) grant or deny the petition following an evidentiary hearing. *Id.* at 9. Additionally, a petition should not be dismissed unless it is clear that the petitioner could never prove any set of facts entitling him to relief. *Lubbers*, 105 Ill. 2d at 210; *Ostendorf*, 89 Ill. 2d at 280. If a petition survives dismissal, summary judgment considerations apply. *Vincent*, 226 Ill. 2d at 9. Summary judgment is inappropriate, however, where a material issue of fact exists. *Id.* In that instance, an evidentiary hearing is appropriate. Compare *Warren County*, 2015 IL 117783, ¶ 51 (stating that court "should" hold a full evidentiary hearing when the respondent challenges the facts supporting the petition), and *Forest Preserve of Cook County v. Chicago Title & Trust Co.*, 2015 IL App (1st) 131925, ¶ 86 (reviewing the circuit court's decision not to hold an evidentiary hearing for an abuse of discretion), with *Vincent*, 226 Ill. 2d at 9 (stating that the court is "required" to hold an evidentiary hearing when a material issue of fact exists), and *Ostendorf*, 89 Ill. 2d at 286 (stating that the court "must" hold an evidentiary hearing when the petition's central facts are in dispute). Ultimately, the petitioner has the burden of proving his case by a preponderance of the evidence in order to obtain relief. See *Airoom*, 114 Ill. 2d at 223.

¶ 33          Our supreme court has identified two considerations that dictate the standard of review to be applied with respect to a section 2-1401 petition: (1) the procedural disposition of the petition (*Vincent*, 226 Ill. 2d at 14-18) and (2) the nature of the challenge presented in the petition (*Warren County*, 2015 IL 117783, ¶ 31). With respect to the first consideration,

*Vincent* determined that dismissals and judgments on the pleadings were subject to *de novo* review, as applying an abuse of discretion standard would be inconsistent with the usual rules of civil practice. *Vincent*, 226 Ill. 2d at 14-16. In addition, *Vincent*, which involved a petition challenging a judgment as void, did not decide the appropriate standard of review to be applied following an evidentiary hearing. *Id.* at 16-17. Nonetheless, *Vincent* made certain comments placing doubt on the availability of equitable relief and, in turn, whether the abuse of discretion standard applied to factual issues raised in a section 2-1401 petition (*id.*). Nine years later, the supreme court resolved such doubts in *Warren County*.

¶ 34    In *Warren County*, the court found that "the nature of the challenge presented in a section 2-1401 petition is critical because it dictates the proper standard of review." *Warren County*, 2015 IL 117783, ¶ 31. Specifically, a section 2-1401 petition can present either factual or legal challenges. *Id.* When a section 2-1401 petition presents a fact-dependent challenge, the circuit court's ultimate decision is reviewed for an abuse of discretion. *Id.* ¶ 51. In addition, the court found that *Vincent*'s statements prohibiting equitable considerations were limited to purely legal issues. *Id.* ¶ 47. Although *Warren County* also stated that *Vincent* "must be viewed in its narrow context of a section 2-1401 petition that raises a purely legal challenge to a judgment by alleging that it is void" (*id.*), we do not find that the court intended to limit *Vincent* to legal issues based on a void judgment or to retreat from *Vincent*'s determination that the dismissal or denial of a petition without an evidentiary hearing is subject to *de novo* review. But see *Harris Bank N.A. v. Harris*, 2015 IL App (1st) 133017, ¶¶ 39, 60 (applying an abuse of discretion standard where no evidentiary hearing was held); *Forest Preserve District v. Chicago Title & Trust Co.*, 2015 IL App (1st) 131925, ¶¶ 70, 84 (same). To apply an abuse of discretion standard to a judgment on the pleadings would contradict the long held view that section 2-1401 proceedings are subject to the usual rules of civil practice. *Vincent*, 226 Ill. 2d at 7-8, 11; *Ostendorf*, 89 Ill. 2d at 279; see also *Pielet v. Pielet*, 2012 IL 112064, ¶ 30 (reviewing summary judgment *de novo*); *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 23 (reviewing dismissal of a complaint *de novo*). Accordingly, we consider the nature of the challenge presented as well as the procedural disposition of plaintiffs' petition.

¶ 35    Here, plaintiffs purported to raise a choice-of-law issue, which generally constitutes a legal matter. *Hussein v. L.A. Fitness International, LLC*, 2013 IL App (1st) 121426, ¶ 11. In this instance, however, that choice-of-law issue depends on the interpretation of foreign law. Courts may take judicial notice of the laws of other jurisdictions within the United States. 735 ILCS 5/8-1003 (West 2014). The law of a foreign country, however, is not subject to judicial notice. 735 ILCS 5/8-1007 (West 2014). Instead, "the laws of foreign counties must be pled and proven as any other fact." *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 145; see also *Atwood Vacuum Machine Co. v. Continental Casualty Co. of Chicago*, 107 Ill. App. 2d 248, 263-65 (1969) (stating that expert testimony is appropriate where parties dispute the meaning of foreign law). Thus, the defense raised in the section 2-1401 petition carried the potential for factual determinations.

¶ 36    Notwithstanding the nature of the challenge presented, the section 2-1401 petition was denied without an evidentiary hearing, based on the written declaration of defendants' experts that (1) the content of the ACC letter did not support plaintiffs' position and (2) even if it did, the signatory was a mere legal clerk, unqualified to opine on such matters. Essentially, defendants sought, and received, judgment on the pleadings. We also find that the competing documents presented in support of and against section 2-1401 relief smack of summary

judgment proceedings. Accordingly, we must determine *de novo* whether any genuine issue of material fact exists in terms of whether the ACC's letter supports a meritorious defense that would have prevented the circuit court from entering summary judgment on the underlying claim. *Wells Fargo Bank, N.A. v. McCondichie*, 2017 IL App (5th) 153576, ¶ 10. Contrary to the suggestion of the parties and the circuit court, the section 2-1401 petition did not present a discretionary matter at this juncture. See *Westfield Insurance Co. v. West Van Buren, LLC*, 2016 IL App (1st) 140862, ¶ 11 (observing that we are not bound by the circuit court's reasoning on *de novo* review).

¶ 37    A court must determine whether a conflict of law exists before applying choice-of-law analysis, as Illinois law applies in the absence of a conflict. *Universal Underwriters Insurance Co. v. LKQ Smart Parts, Inc.*, 2011 IL App (1st) 101723, ¶¶ 46-47.[7] We note that defendants overlook the significance of this first step. Where a conflict does exist, the objective of the choice-of-law process is to apply the law of the jurisdiction that has the most significant relationship with the parties and the particular issue in the dispute. *Townsend*, 227 Ill. 2d at 160. Furthermore, while a party seeking a choice-of-law determination initially has the burden of showing that such a conflict exists (*Bridgeview Health Care Center, Ltd. v. State Farm Fire & Casualty Co.*, 2014 IL 116389, ¶ 14), a section 2-1401 petitioner has the burden of showing his entitlement to relief (*In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 56).

¶ 38    According to the ACC's letter, the NZACA does not prevent New Zealanders from bringing civil claims for personal injury in overseas courts. Additionally, plaintiffs contend that the ACC's letter supports an inference that the ACC interprets the NZACA as allowing compensatory damages outside of New Zealand, as no litigant would bring an action if damages were unavailable. See *Falge v. Lindoo Installations, Inc.*, 2017 IL App (2d) 160242, ¶ 13 (finding that a genuine issue of material fact exists where undisputed facts are subject to different inferences). We will assume for purposes of this appeal that plaintiffs' inference is reasonable and that the ACC's letter, *if considered by the circuit court*, could lead the court to conclude that no conflict of law exists, leaving Illinois law in control of damages. See *id.* (stating that courts must construe evidence in the light most favorable to the nonmovant at the summary judgment stage). Nonetheless, the ACC's letter would not have affected the summary judgment order entered in the underlying proceeding.

¶ 39    Here, the ACC's letter was signed by legal clerk Aric Shakur. Defendants have maintained that in New Zealand, legal clerks are not attorneys and, thus, the individual who authored the ACC's letter would not have been qualified to provide an expert opinion on the interpretation of the NZACA. See *Bangaly*, 2014 IL App (1st) 123760, ¶ 165 (observing that attorneys are permitted to opine regarding the interpretation of foreign laws). Plaintiffs, apparently relying on Shakur's direction to contact Luke Hawes-Gandar with further questions, now assert that "the letter clearly was written by Luke Hawes-Gandar who an internet search reveals to be a solicitor, a licensed attorney, with the New Zealand ACC." We decline plaintiffs' invitation to speculate as to matters outside the record. See *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009). Because the circuit court could not consider the opinion of a legal clerk from New

_____

[7]We note that the relationship between the NZACA and choice-of-law analysis is somewhat circular. The NZACA cannot apply to bar compensatory damages unless New Zealand law prevails in choice-of-law analysis. Yet, New Zealand law cannot prevail in choice-of-law analysis unless the NZACA bars compensatory damages in this case and, thus, creates a conflict between laws.

Zealand, the ACC's letter would not have affected the court's choice-of-law analysis or the resulting summary judgment order. Accordingly, plaintiffs' petition did not demonstrate a meritorious defense. See *Lyons Lumber & Building Center, Inc. v. 7722 North Ashland, LLC*, 2016 IL App (3d) 140487, ¶ 22 (defense is meritorious under section 2-1401 where, if believed, it would warrant relief).

¶ 40   Finally, we reject plaintiffs' assertion that the invalid order purporting to vacate the circuit court's summary judgment order constituted new evidence supporting a meritorious defense. At a hearing on October 15, 2015, defense counsel stated that the only new evidence plaintiffs relied on was the ACC's letter. Plaintiffs' counsel did not correct that statement and at all times emphasized only the ACC's letter. Accordingly, plaintiffs abandoned this assertion. Additionally, the invalid order does not constitute a factual matter that would have affected the judgment had it been known. See *Lubbers*, 105 Ill. 2d at 210. The only fact to be derived from the invalid order is that the court equivocated in applying choice-of-law analysis. The order itself, however, does not constituted evidence on the interpretation of New Zealand law. Accordingly, that order does not entitle plaintiffs to relief.

¶ 41                                III. CONCLUSION

¶ 42   Having carefully reviewed the record and the parties' arguments, we find the circuit court properly dismissed plaintiffs' petition, as they failed to present new evidence that would have prevented the circuit court from entering the underlying summary judgment order. In light of our determination, we need not consider defendants' contentions with respect to due diligence.

¶ 43   For the foregoing reasons, we affirm the circuit court's judgment.

¶ 44   Affirmed.