# Illinois Official Reports

## Appellate Court

---

**Lyons Lumber & Building Center, Inc. v. 7722 North Ashland, LLC,**
**2016 IL App (3d) 140487**

---

Appellate Court
Caption

LYONS LUMBER AND BUILDING CENTER, INC., Plaintiff-Appellant, v. 7722 NORTH ASHLAND, LLC; ASHLAND JUNEWAY, LLC; and JAY JOHNSON, Individually, Defendants-Appellees.

District & No.

Third District
Docket No. 3-14-0487

Filed

July 13, 2016

Decision Under
Review

Appeal from the Circuit Court of Will County, No. 11-L-277; the Hon. Barbara Petrungaro, Judge, presiding.

Judgment

Reversed.

Counsel on
Appeal

Zane D. Smith (argued), of Zane D. Smith & Associates, Ltd., of Chicago, and Sheila A. Genson, of Schaumburg, for appellant.

John F. Argoudelis (argued), of Plainfield, for appellees.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice McDade concurred in the judgment and opinion.
Justice Carter dissented, with opinion.

**OPINION**

¶ 1    This appeal arises out of a breach of contract action filed by plaintiff, Lyons Lumber & Building Center, Inc., against defendants, 7722 North Ashland, LLC (Ashland), Ashland-Juneway, LLC (Juneway) (collectively, the defendant LLCs), and Jay Johnson, who personally guaranteed the two loans each of the defendant LLCs made with plaintiff. The trial court entered a default judgment against the defendant LLCs and granted plaintiff's motion for summary judgment against Johnson, individually, with a resulting judgment of $165,806.84, jointly and severally, against all the defendants. More than 30 days following the judgment, defendants filed a motion to vacate the judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2012)), which the trial court granted. On appeal, plaintiff argues the trial court erred in granting defendants' motion to vacate. We agree and reverse.

¶ 2                                              FACTS

¶ 3    On April 8, 2011, plaintiff filed a two-count complaint against defendants for breach of contract. The complaint alleged that plaintiff was in the business of providing lumber services, the defendant LLCs were in the construction business, and Jay Johnson was the president of the defendant LLCs. In count I, plaintiff alleged that it had entered into an installment note with Ashland for $61,093 plus interest, under which Ashland defaulted. In count II, plaintiff alleged that it had entered into an installment note with Juneway for $14,908 plus interest, under which Juneway defaulted. Johnson personally guaranteed both notes. Plaintiff requested damages for the principle amount due, interest, costs, and attorney fees, as explicitly provided for in the installment notes.

¶ 4    After multiple unsuccessful attempts, on October 14, 2011, plaintiff served defendants with the summons and complaint. On December 21, 2011, plaintiff filed a motion for default judgment against defendants for their failure to appear before the trial court. At the hearing on December 29, 2011, Johnson appeared *pro se* and the trial court granted him 28 days to file an appearance and answer.

¶ 5    On February 9, 2012, Johnson filed a *pro se* appearance and verified answer to the complaint. In his answer, Johnson stated that the installment note spoke for itself but denied signing the note as guarantor. The parties engaged in written discovery. On June 11, 2012, attorney Joseph Casper filed a substitute appearance on behalf of all named defendants. The matter was continued for a status on settlement and discovery multiple times, with defendants' attorney appearing at the majority of the status hearings.

¶ 6    On June 17, 2013, attorney Casper did not attend the scheduled court hearing. The trial court granted plaintiff's counsel's motion to withdraw and granted attorney S.A. Genson leave to file a substitute appearance on behalf of plaintiff. The trial court ordered the defendant LLCs to file their answers to the complaint by July 1, 2013, and to file their answers to plaintiff's requests to admit and any outstanding discovery by July 15, 2013. The court continued the matter for a status hearing to August 8, 2013. Plaintiff's counsel forwarded the order of June 17, 2013, to defendants' counsel.

¶ 7    On July 24, 2013, plaintiff filed a motion for default, motion to have deemed admitted, and motion to bar against the defendant LLCs for their failure to answer the complaint. Plaintiff

- 2 -

also requested that the court bar Johnson from presenting evidence and testimony for the defendant LLCs' failure to comply with the court's order that Johnson be deposed by July 15, 2013.

¶ 8 On August 8, 2013, attorney Casper sent an e-mail to plaintiff's counsel indicating that he was delayed in Europe on business and was requesting an extension of time to respond to plaintiff's discovery requests and to file responsive pleadings. At the status hearing on August 8, 2013, plaintiff's counsel informed the court of Casper's correspondence. The trial court granted plaintiff's motion for default against the defendant LLCs, deemed the facts in requests to admit to be admitted, and barred Johnson from presenting any evidence or testimony.

¶ 9 On September 18, 2013, plaintiff filed a motion for summary judgment against defendants; the trial court allowed defendants until October 18, 2013, to respond. On October 25, 2013, the trial court reentered default judgment against the defendant LLCs and granted the motion for summary judgment against Johnson. The trial court also granted plaintiff's petition for attorney fees and costs. The trial court awarded plaintiff a total judgment of $165,806.84. Plaintiff filed citations to discover the defendants' assets.

¶ 10 On January 28, 2014, attorney John Argoudelis filed a motion for leave to file his appearance on behalf of defendants. Argoudelis also filed a motion to vacate the default judgment of October 25, 2013, pursuant to section 2-1401 of the Code, arguing that defendants, who were represented by attorney Casper, did not become aware of the default judgment until a citation to discover was served on a family friend. Defendants claimed that they had been attempting to contact Casper via e-mail since November 18, 2013, and Casper was not responsive. The last information defendants received from Casper was on August 14, 2013, when Casper informed them that the case was pending and he would provide an update upon his return to the country. Casper did not advise defendants that they were in default or that a motion for default was pending. In support of the motion to vacate, defendants argued that a meritorious defense to the complaint existed in that Johnson was not represented by an attorney when he signed the note, which was prepared by plaintiff's attorney, and Johnson did not understand the nature of the personal guaranty.

¶ 11 In response, plaintiff argued that the judgment should stand because defendants failed to attach an affidavit supporting their claim of a meritorious defense and failed to show the entry of the judgment was not the result of defendants' lack of due diligence. Additionally, plaintiff argued that defendants offered no meritorious defense.

¶ 12 In reply and in support of their motion to vacate the default judgment, defendants attached an affidavit from Johnson. In the affidavit, Johnson attested that defendants had been represented by Casper since June 11, 2013. Johnson also attested that defendants did not become aware of the default judgment entered until January 14, 2014, when a family friend was served with a citation to discover assets in the case. Johnson indicated that he had been unsuccessfully attempting to contact Casper since November 18, 2013. Johnson had not heard from Casper since receiving a text message from him on August 14, 2013, in which Casper informed Johnson that the case was still pending and Casper would update Johnson upon his return to the country. Johnson further attested to the facts of his claimed meritorious defenses that (1) he was not represented by counsel when he signed the note, (2) the note was prepared by the attorney for plaintiff, (3) he did not understand the nature of the personal guaranty, and (4) he disputed the amount owed and the amount of the judgment.

¶ 13    On April 8, 2014, plaintiff deposed Johnson in regard to his affidavit. Johnson testified that he has a master's degree and is a licensed real estate broker. In March 2011, Johnson had a net worth of over $12 million. Johnson had spent the past five years developing residential real estate as the sole member of Cornerstone Residential Group, LLC. Johnson developed and rehabilitated several hundred properties. As part of the business, Johnson was required to enter into contracts as the managing member of the LLC. Financing documents that Johnson signed contained personal guaranties, which Johnson always had his attorney review. Johnson did not recall his attorney ever actually explaining the nature of a personal guaranty. Johnson understood generally that a personal guaranty of a debt means that he would be liable for the obligation.

¶ 14    According to Johnson's deposition testimony, based on the conversation Johnson had with the attorney for plaintiff who had prepared the contract, Johnson understood his personal guaranties on the loans in this case to mean that he was guaranteeing the principle amount of the defendant LLCs' loans and did not have any personal obligation for interest. Johnson did not have his attorney review these documents because he "didn't have the money to have some attorney look it" and he relied on plaintiff and its attorney to document the terms upon which the parties had orally agreed. Johnson testified, "the nature of the discussion with both the Lyons Lumber representative and the attorney was that I was guaranteeing, my understanding, I guaranteeing the principal of the note." Johnson's understanding was that there would be no guaranty of any interest on any unpaid amount, attorney fees, or collection costs. Johnson was disputing the portion of the judgment regarding interest, attorney fees, and collections costs.

¶ 15    Johnson further testified in his deposition that he had paid his original attorney, Casper, in the form of free rent in a building owned by an LLC for which Johnson was the managing member. But for Casper's representation of Johnson, the rent would have been $1000 per month. Johnson last heard from Casper on August 14, 2013, when Casper advised Johnson in a text message that he was out of the country and would provide an update upon his return. On January 14, 2014, Johnson became aware of the citation to discover his assets, at which time he contacted several people to determine how to proceed. Someone advised Johnson to check the status of the case online. Through an online inquiry of the case that same day or the following day, Johnson discovered the court had entered a default judgment against the defendant LLCs.

¶ 16    At the hearing on the motion to vacate on May 30, 2014, the trial court heard arguments of the parties' counsel, but no additional evidence was introduced. The trial court took the matter under advisement and subsequently, on June 2, 2014, issued its order granting the defendants' motion to vacate the default judgment pursuant to section 2-1401 of the Code. The trial court found that Johnson's affidavit and deposition indicated the existence of a meritorious defense and defendants' arguments in support of the motion established defendants' due diligence.

¶ 17    Plaintiff appeals.

¶ 18                                              ANALYSIS

¶ 19    On appeal, plaintiff argues that the trial court erred in vacating its October 25, 2013, default judgment order. Specifically, plaintiff claims that defendants failed to show due diligence in presenting their defenses and filing their section 2-1401 petition. Plaintiff additionally argues that even if defendants are found to have exercised due diligence, the motion to vacate should not have been granted because defendants lacked a meritorious defense. In response, defendants argue that their motion to vacate satisfied the requirements of section 2-1401 of the

Code and supported the trial court's vacatur order. We agree with plaintiff that defendants failed to set forth specific facts showing the existence of a meritorious defense. Accordingly, we need not consider whether they showed due diligence in presenting their defenses or in filing their section 2-1401 petition.

¶ 20    Section 2-1401 of the Code of Civil Procedure provides a statutory postjudgment procedure to obtain relief from final orders and judgments. 735 ILCS 5/2-1401 (West 2012); *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Section 2-1401(a) provides:

> "(a) Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. *** All relief heretofore obtainable and the grounds for such relief heretofore available, *** shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered." 735 ILCS 5/2-1401(a) (West 2012).

¶ 21    A section 2-1401 petition must be supported by affidavit or other appropriate showing as to matters not of the record and can be filed no later than two years after the entry of the contested order or judgment. 735 ILCS 5/2-1401(b), (c) (West 2012); *Warren County*, 2015 IL 117783, ¶ 31. To obtain relief under section 2-1401, the petitioner must set forth specific facts showing (1) the existence of a meritorious defense, (2) due diligence in presenting this defense or claim that would have precluded the judgment, and (3) due diligence in filing the section 2-1401 petition for relief. *Warren County*, 2015 IL 117783, ¶ 51. The allegations of a section 2-1401 petition must be established by a preponderance of the evidence. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 223 (1986). If the respondent answers the petition, raising issues for the circuit court to determine, then the petitioner has the burden of proving his case by the requisite quantum of evidence. *Id.* If the petitioner waives his right to an evidentiary hearing involving witnesses and the opportunity to cross-examine, the section 2-1401 petition will be reviewed on the basis of the pleadings, affidavits, and supporting materials in evidence. *Id.*

¶ 22    A section 2-1401 petition invokes the equitable powers of a circuit court to prevent injustices. *Warren County*, 2015 IL 117783, ¶ 34. A court should grant the relief sought under a section 2-1401 petition where necessary to achieve justice. *Id.* ¶ 39. The determination of whether a section 2-1401 petition that presents a fact-dependant challenge to a final judgment should be granted is within the sound discretion of the circuit court, depending on the facts and equities presented. *Id.* ¶ 51. However, the preliminary issue of whether a defendant has presented a meritorious defense is inherently a question of law and is, therefore, subject to *de novo* review. *Pekin Insurance Co. v. Campbell*, 2015 IL App (4th) 140955, ¶ 28; *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 10. "A meritorious defense is one which, if believed by the trier of fact, would defeat plaintiff's [underlying] claim." *Halle v. Robertson*, 219 Ill. App. 3d 564, 568 (1991) (citing *Cunningham v. Miller's General Insurance Co.*, 188 Ill. App. 3d 689 (1989)).

¶ 23    The dissent agrees that to overturn a judgment on the basis of section 2-1401, the petitioner must set forth specific factual allegations supporting the existence of a meritorious defense, yet it glosses over the fact that defendants in this case failed to meet that burden. The dissent points to no "specific factual allegations" to support the dissent's (not the defendants') theory. While it is true that a trial court may relax the applicable due diligence standards when considering a section 2-1401 petition (*Warren County*, 2015 IL 117783, ¶ 51), the existence of due diligence

is a factual question. The existence of a meritorious defense is a legal question. Relaxing the petitioner's burden with regard to a legal question is certainly not what the Illinois Supreme Court said or intended in *Warren*, and to do so would surely constitute an abuse of discretion. See *Koon v. United States*, 518 U.S. 81, 100 (1996) ("The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.").

¶ 24    Here, in support of their alleged meritorious defense, defendants stated only that (1) Johnson was not represented by an attorney when he signed the note, (2) the note was prepared by plaintiff's attorney, and (3) Johnson did not understand the nature of the personal guaranty.

¶ 25    The first two alleged defenses are simply not defenses to either the notes or the personal guaranty.

¶ 26    Signing a contract without an attorney is not a defense.

¶ 27    The second alleged defense, likewise, is no defense on the facts of this case. That plaintiff's attorney drafted the contracts would be relevant if, and only if, the contracts were ambiguous. Ambiguities are construed against the drafter. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998). No ambiguity is alleged. In fact, in response to the complaint, Johnson pled that "the documents speak for themselves."

¶ 28    A contract does not become voidable simply because one party drafted the document and the other party chose not to retain counsel or read the document before signing it. It is well-settled law in Illinois that a competent adult is charged with knowledge of, and assent to, a document that he willingly signs and that ignorance of the contents of that document does not avoid its effect. *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 121 (citing *Black v. Wabash, St. Louis & Pacific Ry. Co.*, 111 Ill. 351, 358 (1884)). This is true even if we suspend all agnosticism and accept that Johnson, a licensed real estate broker and developer with a net worth of over $12 million, did not have the money to hire an attorney or that he did not understand the terms of the personal guaranty.

¶ 29    Disposition of these first two alleged defenses mandates a finding that the trial court erred in vacating the default judgment against the defendant LLCs.

¶ 30    The third alleged defense goes only to Johnson's personal guaranty. Again, Johnson does not allege fraud, only that he did not understand what he was signing. Assuming, *arguendo*, that one with Johnson's education and work experience could somehow not understand documents which he later agreed "speak for themselves," his alleged misunderstanding is not a meritorious defense.

¶ 31    "Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984); see also *Saddler v. National Bank of Bloomington*, 403 Ill. 218, 228 (1949); *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999).

¶ 32    Nowhere do defendants allege or argue that the contract was ambiguous, nor could they have. Both notes at issue in this case clearly and unambiguously stated that upon default, the defendant LLCs were responsible for paying the unpaid principal amount, interest, costs, and attorney fees. The personal guaranties, which Johnson admits he signed, guaranteed that the notes would be paid in full in accordance with their respective terms and specified that the

amount due would include all accrued but unpaid interest. If that were not enough, the second paragraph of each guaranty explicitly states: "The Guarantor hereby acknowledges receipt of a correct and complete copy of the Note and consent [*sic*] to all of the terms and provisions thereof." As stated above, Johnson's claimed ignorance of the terms of the guaranties he willingly signed does not negate the effect of those guaranties. *Black*, 111 Ill. at 358.

¶ 33     The dissent claims the use of parol evidence would be available to defendants in this case, as they set forth a meritorious defense of "reformation based upon a mutual mistake." *Infra* ¶ 43. This is simply not true. In defendants' petition to vacate, they alleged Johnson did not understand the nature of the personal guaranty. In his affidavit and deposition testimony, Johnson stated that based on conversations he had with plaintiff's counsel, he thought he was personally guaranteeing only the principal amounts on the loans, excluding interest, attorney fees, and collections costs. Furthermore, at the hearing on the petition to vacate, defendants' lawyer argued, "So, while they spend a lot of time in their surresponse arguing the merits of our defenses, the point is, our defenses are simply this: Our understanding of our guarantee was that it was for the principal amount only, not interest in everything else. That is our factual argument supported in our deposition and supported in our affidavit." In other words, according to defendants' own allegations, Johnson's misunderstanding concerned only the personal guaranties, not the promissory notes. As stated above, the validity of Johnson's personal guaranties has no bearing on the defendant LLC's liability.

¶ 34     Moreover, implicit in the statement "I did not understand" is a claim that any mistake was Johnson's and Johnson's alone. Unilateral mistake is not a defense to a contract claim. Neither is it a basis for reformation. Because defendants have not alleged a claim of mutual mistake, the dissent's analysis regarding the use of parol evidence is inapposite. Even assuming the truth of Johnson's statements and allegations that he did not understand the nature of the personal guaranty, he still, as a matter of law, has no meritorious defense. Or, as is oft stated in courtrooms in many southern states, "That ol' dog won't hunt."

¶ 35     Consequently, Johnson's allegations regarding his understanding of the guaranties are immaterial. He did not allege "specific facts" to support a defense of mutual mistake. Because the written documents in this case were unambiguous, the trial court was required to interpret them as a matter of law, *i.e.*, without the use of extrinsic evidence. *Air Safety, Inc.*, 185 Ill. 2d at 462. For this reason, and for the reasons stated above, defendants have failed to show the existence of a meritorious defense. The trial court, therefore, erred in granting defendants' motion to vacate the default judgments.

¶ 36                                          CONCLUSION

¶ 37     For the forgoing reasons, we reverse the order of the circuit court of Will County granting defendants' motion to vacate the default judgments.

¶ 38     Reversed.

¶ 39     JUSTICE CARTER, dissenting.

¶ 40     I respectfully dissent from the majority's opinion. Based upon this record, I would hold the trial court did not err in granting the defendants' motion to vacate pursuant to section 2-1401 of the Code of Civil Procedure where defendants asserted the existence of a meritorious defense,

due diligence in presenting the defense, and due diligence in filing the section 2-1401 petition for relief. See 735 ILCS 5/2-1401 (West 2012).

¶ 41    Here, defendants acted diligently in defending the original case. Defendants were served with the complaint and hired attorney Casper, who represented them at the following status hearing and case management proceedings. Once defendants became aware that Casper was disingenuous about the status of the case and that he was not actively representing them, defendants hired a new attorney and filed the section 2-1401 motion to vacate.

¶ 42    Defendants were also diligent in bringing the section 2-1401 motion to vacate. Defendants' original attorney, attorney Casper, had never withdrawn as defendants' counsel and failed to keep the defendants accurately informed of the status of the case, despite defendants' inquiries. In response to defendants' diligent inquiries, Casper indicated the case was pending. Casper did not inform defendants about the pending motions for default or summary judgment or that a default judgment had been entered. Defendants only discovered the true status of the case when the citation to discover assets was served. Upon their discovery of the default judgment against them, defendants immediately sought the advice of different counsel and filed a motion within two weeks to have the judgment vacated. Thus, based upon the record before us, the trial court did not err in finding, by a preponderance of the evidence, defendants established due diligence in pursuing their motion to vacate pursuant to section 2-1401 of the Code. See *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 223 (1986).

¶ 43    Additionally, the trial court did not abuse its discretion in finding defendants set forth a meritorious defense by asserting that they disputed the amount of the judgment and Johnson's understanding of the personal guaranty. See *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 106-08 (2006) (courts look to whether the petitioner established the right to have a judgment vacated but do not determine the merits of the underlying cause of action). In reviewing the trial court's ruling on the section 2-1401 petition, we are not determining whether the petitioner has proven the merits of the asserted defense therein but whether the trial court abused its discretion in granting the section 2-1401 petition. See *Warren County*, 2015 IL 117783, ¶ 51 (providing, "[t]he quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence, and the circuit court's ultimate decision on the petition is reviewed for an abuse of discretion"). Johnson's deposition testimony established his assertion that the guaranty did not reflect the parties' agreement that he was only guaranteeing the principal of the loans. Defendants' alleged meritorious defense was not based on an ambiguity in the contract but on a claim of mutual mistake, *i.e.*, the agreement did not reflect the parties' actual agreement, for which the remedy is a reformation of the contract.

¶ 44    The equitable remedy of reformation of a contract allows for a party to change a written agreement to reflect the original agreement of the parties when the writing fails to accurately reflect the parties' intended agreement due to (1) a mutual mistake, or (2) a unilateral mistake by one party coupled with fraud by the other party. *Suburban Bank of Hoffman-Schaumburg v. Bousis*, 144 Ill. 2d 51, 58-59 (1991) (quoting *Harley v. Magnolia Petroleum Co.*, 378 Ill. 19, 28 (1941)). A cause of action for reformation of a writing must allege five elements: (1) the identity of the parties and the existence and substance of an agreement between them; (2) the reduction of the agreement to a writing; (3) the material terms of the writing; (4) a difference between the parties' original agreement and the writing; and (5) the mutual mistake or other basis for reformation. *Schaffner v. 514 West Grant Place Condominium Ass'n*, 324 Ill. App. 3d 1033, 1045 (2001). A promissory note as well as a loan guaranty agreement may be reformed.

See *In re Estate of Hurst*, 329 Ill. App. 3d 326 (2002) (reforming a promissory note held by a husband and wife as tenants in common when parol evidence established that they had requested their attorney to provide for joint tenancy with the right of survivorship); *Farmer City State Bank v. Guingrinch*, 139 Ill. App. 3d 416 (1985) (granting reformation of a written agreement regarding the extent of a guaranty).

¶ 45    When a party alleges mutual mistake or fraud, parol evidence may be admitted to show the true intent and understanding of the parties. *Schaffner*, 324 Ill. App. 3d at 1045; *Ballard v. Grandby*, 90 Ill. App. 3d 13, 16 (1980); *Darst v. Lang*, 367 Ill. 119 (1937). "Parol evidence is admissible to show a mistake in a written instrument." *Darst*, 367 Ill. at 123 (the Statute of Frauds and the parol evidence rule are not applicable in cases of mutual mistake); see also *Ballard*, 90 Ill. App. 3d at 16 (providing the parol evidence rule is not a bar to the admission of evidence on the question of mutual mistake).

¶ 46    In this case, defendants would have to meet their burden of proving the merits of their reformation claim by clear and convincing evidence at the eventual hearing on the claim (see *Great American Federal Savings & Loan Ass'n v. Grivas*, 137 Ill. App. 3d 267, 274 (1985)), but they were not required to do so at this juncture where the trial court was ruling upon their section 2-1401 petition. Based on the pleadings, Johnson's affidavit, and Johnson's deposition testimony, defendants adequately set forth in their section 2-1401 petition a meritorious defense of reformation based upon a mutual mistake.

¶ 47    For the foregoing reasons, I would find that the trial court did not abuse its discretion in granting defendants' section 2-1401 petition.