**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210261-U

Order filed July 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-21-0261 Circuit No. 20-CF-102 |
| BENJAMIN C. LASCELLES, | ) ) | Honorable John P. Vespa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices McDade and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:       Defendant's guilty pleas must stand where (1) the circuit court sufficiently complied with Illinois Supreme Court Rule 402 and (2) plea counsel's error did not deprive defendant of the effective assistance of counsel. Affirmed.

¶ 2       Defendant pleaded guilty to one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b) (West 2020)). He later moved to withdraw his pleas, and the circuit court denied his motion. On appeal, defendant contends the circuit court did not comply with Illinois Supreme

Court Rule 402 (eff. July 1, 2012) before accepting his pleas and his plea counsel was ineffective. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4        On March 3, 2020, defendant, Benjamin C. Lascelles, was indicted on two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)), a Class X felony. Each count charged defendant, "who was 17 years old or older," with the act of sexual penetration with a victim below the age of 13. The alleged victim under count I was R.L., defendant's daughter, and the alleged victim under count II was A.C., his fiancée's daughter. Defendant entered pleas of not guilty and demanded a jury trial.

¶ 5        On December 7, 2020, the State added a count, by information, charging defendant with predatory criminal sexual assault as to A.C. Unlike count II of the indictment, the new count was predicated on sexual contact rather than sexual penetration. The parties agreed to continue the two counts related to A.C. for a stipulated bench trial, and defense counsel advised the court that defendant was prepared to enter an open plea of guilty as to count I of the indictment. Counsel handed the court a signed guilty-plea waiver form providing as follows:

>        "The undersigned defendant respectfully submits a PLEA OF GUILTY to
>        the charge of Predatory Criminal Sexual Assault [,] Count I[,] and states that I have
>        personally appeared in open Court and:
>
>        I was informed and understand the nature of the charge against me;
>
>        I understand the minimum and maximum penalty to which I may be
>        subjected including any penalty because of prior convictions or consecutive
>        sentences;

I understand I have the right to plead not Guilty or to persist in that plea if it has already been made.

I understand I have the right to plead Guilty and that if I plead Guilty, there will not be a trial of any kind, and that by pleading Guilty, I give up the right to a trial by Judge or jury, and the right to be confronted with the witnesses against me. I further understand that I am waiving all of my possible defenses. I represent to the Court that no one has exerted any force, threats, or promises to obtain this plea, including the prosecuting attorney, the Judge, or my own attorney, if any. I understand the facts alleged in the complaint and I am entering a plea of Guilty because the facts are true and I am in fact Guilty of the charges. I further understand that I have a right to be represented by a lawyer and that if I cannot afford a lawyer, or am indigent, the Court will appoint a lawyer to represent me free of charge.

I further understand that I have the right to appeal and that I must first file, within 30 days of being sentenced, a written motion to vacate the judgment and to withdraw my plea of guilty, or to reconsider the sentence which motion must contain all issues and errors I am claiming, and if said motion is granted, the sentence will be modified[,] the plea of guilty, sentence, and judgment will be vacated and trial date will be set on the charge(s) and that any charge(s) dismissed as part of the plea agreement may be reinstated and set for trial."

¶ 6     A. Open Plea to Count I – Predatory Criminal Sexual Assault of R.L.

¶ 7     The circuit court informed defendant it had received a proposed order indicating he was pleading guilty to the charge of predatory criminal sexual assault, count I. The court proceeded to show defendant the guilty-plea form and confirmed that defendant had in fact signed it.

3

¶ 8        In response to the court's questions, defendant stated the following. He could read and write English. He had an associate degree. He had read and signed the guilty-plea form. He had no questions about the form. He had not been threatened or promised anything to sign the form. He had taken anti-hallucinogenic medicine prescribed to him at the jail, but the medicine was not negatively affecting his ability to understand the current proceeding. He was not under the influence of alcohol.

¶ 9        The court informed defendant that, by pleading guilty to count I, he faced a mandatory 6- to 60-year prison term, to be served at 85 percent, followed by mandatory supervised release, from three years to life. The court further stated, "And if you are found guilty of either one of the remaining two counts [as to A.C], any incarceration you would get there would run consecutively to anything I would give you on Count I. 'Consecutively' means in addition to, not at the same time as." Defendant affirmed that he understood and had no questions.

¶ 10        The State provided an extensive factual basis for the guilty plea, stating the evidence would establish that defendant was born in 1987 and that R.L., his daughter by his ex-wife, was born in 2011. The factual basis included inculpatory testimony expected of (1) R.L., (2) R.L.'s mother, (3) a police detective who interviewed R.L. about the sexual abuse when she was eight years old, and (4) a forensic investigator who examined 54 image files and 7 video files, some of which depicted defendant subjecting R.L. to vaginal and anal penetration. Defendant and his attorney both acknowledged that it appeared the State could prove the charged offense beyond a reasonable doubt. The court found a factual basis for the guilty plea as to count I. It accepted the plea and continued the counts as to A.C. for a potential stipulated bench trial.

¶ 11                           B. Partially Negotiated Plea Agreement

¶ 12          Rather than proceed with a stipulated bench trial, the parties executed a partially negotiated plea agreement in January 2021. Pursuant to this agreement, defendant would plead guilty to a new, less serious charge as to A.C. (aggravated criminal sexual abuse) and would not withdraw his guilty plea to count I. In exchange, the State would dismiss the predatory criminal sexual assault counts as to A.C. and would ask the court to cap the maximum aggregate sentence at 55 years for the charges as to both girls.

¶ 13          *Plea Hearing: Aggravated Criminal Sexual Abuse of A.C. (Superseding Count II)*

¶ 14          On January 27, 2021, the State charged defendant by information with aggravated criminal sexual abuse of A.C. 720 ILCS 5/11-1.60(b) (West 2020). This charge, a Class 2 felony, superseded the Class X felony charged in count II of the indictment. It alleged that defendant "knowingly committed an act of sexual conduct *** with [A.C.] whose date of birth is **/**/2013 and who was under 18 years of age at the time of the offense, and the defendant was a family member of the victim, having resided in the same household as the victim for at least 6 months." See *id.*

¶ 15          The circuit court informed defendant that it had received a proposed order providing that defendant was pleading guilty to the charge of aggravated criminal sexual abuse. Defense counsel indicated that this guilty plea would dispose of all remaining charges. The court provided defendant a copy of the new charging document, which superseded count II of the indictment. It instructed defendant to read it over. Defense counsel interjected that he had presented defendant a copy of the proposed information at the county jail, where they "had a thorough discussion regarding it." Defendant agreed with his counsel's statement. He further agreed that the new charging document, which he had just read over, reflected the charge to which he would be

5

pleading guilty. The court observed that the guilty-plea form had been amended by interlineation. Defense counsel explained that he amended the form to reflect the new charge of aggravated criminal sexual abuse. Aside from this new charge, the guilty-plea form was identical to the form used for count I. See *supra* ¶ 5.

¶ 16 The court directed a series of questions to defendant, whose responses indicated the following. He read and signed the guilty-plea form, as amended; he was not threatened or promised anything to sign the form; he was not under the influence of alcohol; and although he took an antidepressant and anti-hallucinogen prescribed at the jail, neither drug was negatively affecting his ability to understand the current proceeding.

¶ 17 Before proceeding to the State's factual basis, the court noted that defendant "looks and sounds perfectly fine, *** [has] always seemed *** probably way above average intelligence[,] *** and sounds very articulate." Defense counsel agreed, adding that defendant "has been able to assist me."

¶ 18 The State's factual basis included inculpatory testimony expected of (1) A.C.'s mother (defendant's fiancée), (2) the police detective who interviewed A.C. when she was six years old, and (3) a forensic investigator who found 90 photos on defendant's devices depicting child pornography, including 5 sexually explicit images of A.C. In some of the images, A.C. is lying face down on an individual's legs and an adult hand can be seen wearing a black ring apparently identical to the one in defendant's possessions at the county jail. In one photo, this hand is pulling A.C.'s underwear to the side, with the index finger extended and pressed between A.C.'s buttocks. Defense counsel and defendant both acknowledged the State could prove the elements of the charged offense beyond a reasonable doubt. The court found a factual basis for the plea.

¶ 19    The court asked about the sentencing range for this count. Defense counsel stated that the sentencing range would normally be three to seven years because the charged offense was a Class 2 felony. However, because the victim was under the age of 12, the offense was extended-term eligible, and defendant would be facing a day-for-day sentence of 3 to 14 years. The State indicated that pursuant to the parties' partially negotiated plea agreement, the remaining counts were withdrawn, and the aggregate sentence was capped at 55 years for counts 1 and 2. The State explained that, but for the 55-year cap, defendant's maximum exposure would be 74 years, "60 years [for count I] plus 14 [years for the superseding count II]." The court asked defendant if he understood "all that," to which defendant responded in the affirmative. The State and defense counsel agreed that the mandatory supervised release on this count would be two years.

¶ 20    Shortly after the court informed defendant that the range for the superseding count was 3 to 14 years, the State stated that the correct range was actually 7 to 14 years. Defense counsel agreed, and the following exchange took place:

> "THE COURT: Now, [defendant], is that the first time you heard that?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: You're justified, as you were five minutes ago, in saying, 'I don't want to plead guilty to that count then now that I hear seven to 14 instead of three to 14.' Do you need to talk to your lawyer about this?
>
> THE DEFENDANT: No, your Honor.
>
> THE COURT: Are you still wanting to do this, knowing it's no longer three to 14, now it's seven to 14?
>
> THE DEFENDANT: Yes, your Honor."

7

¶ 21    Defense counsel indicated that, as part of the negotiated plea, defendant was voluntarily waiving his right to have the State acquire a grand jury indictment or conduct a preliminary hearing on the superseding count II. The State dismissed the remaining predatory criminal sexual assault counts, both with respect to A.C., and the court set the matter for a sentencing hearing and ordered a presentence investigation.

¶ 22                              D. Sentencing Hearing

¶ 23    The circuit court conducted a sentencing hearing on February 19, 2021. After viewing inculpatory photographic and video evidence in closed court, the court listened to (1) information concerning defendant's childhood, military service, and mental health, (2) a police detective's testimony concerning three non-conclusive investigations into allegations that defendant had sexually abused R.L. in 2016 and 2017, (3) arguments concerning the admissibility of portions of certain victim-impact statements, and (4) the reading of said victim-impact statements. A presentence investigation report revealed that defendant did not have a prior criminal record aside from two speeding tickets.

¶ 24    The State requested that the court sentence defendant to the negotiated cap of 55 years—48 years for count I, served at 85%, and 7 years for the superseding count II, served at 50%. The State argued that this negotiated plea allowed defendant to avoid facing mandatory life imprisonment under the initial bill of indictment, which had charged him with two counts of predatory criminal sexual assault. The State explained:

        "After conferring with the victim's mothers and entering into plea negotiations with the defense, the People agreed to dismiss the second count of predatory criminal sexual assault and instead filed a superseding Count II of aggravated criminal sexual abuse. But for that decision, the defendant would be facing mandatory life

                                        8

imprisonment. This predatory criminal sexual assault statute requires that upon conviction of a second victim, regardless of the sequence, it's mandatory natural life.[1] So by the State doing that, he has received his consideration for pleading guilty and not putting these children and their families through a drawn-out trial."

¶ 25    Defense counsel recommended an aggregate sentence of around 40 years, suggesting a sentence in "the high 20s" with respect to count I and "perhaps 10 years" with respect to count II. He urged the court not to give much weight to the graphic images and videos produced, noting defendant was already facing federal charges for production of child pornography. He acknowledged the State "did show *** some mercy" by "agree[ing] to the filing of the information with respect to the second victim." He argued, however, that "55 years would be a *de facto* [life] sentence that would likely put him away [for] the rest of at least his productive life."

¶ 26    The court sentenced defendant to a 55-year aggregate sentence. It stated,

> "Maximum I can give is 55. Guess what I'm giving: 55. Now, the State wanted that to be 48 years for Count I. That's what I'm doing. Seven years on Count II, that's what I'm doing. The 48 years will be done at 85 percent; the 7 years will be done at an eligibility for day-for-day. I'm adding on lifetime mandatory supervised release."

¶ 27                          E. Motion to Withdraw Guilty Plea

¶ 28    On February 24, 2021, defendant moved to withdraw his guilty pleas, alleging the imposed sentence was excessive. On June 8, 2021, defendant amended his motion, replacing his excessive-

---

[1] "A person who has attained the age of 18 years at the time of the commission of the offense and convicted of predatory criminal sexual assault of a child committed against 2 or more persons regardless of whether the offenses occurred as the result of the same act or of several related or unrelated acts shall be sentenced to a term of natural life imprisonment." 720 ILCS 5/11-1.40(b)(1.2) (West 2018).

sentence allegations with allegations of ineffective assistance of counsel. Citing *People v. Robinson*, 2021 IL App (4th) 200515, the amended motion explained that defendant may not base his motion to withdraw his guilty plea on an excessive-sentence challenge. Defendant's original and amended motions were filed by defense counsel, and both motions requested a *Krankel* hearing.

¶ 29    Counsel informed the court that defendant had filed a formal complaint against him with the Attorney Registration and Disciplinary Commission (ARDC). Defendant's contentions of ineffective assistance of counsel were set forth in his ARDC complaint letter.

¶ 30                                   1. Krankel *Hearing*

¶ 31    On June 14, 2021, the court held a *Krankel* hearing to review defendant's allegations of ineffective assistance of counsel. Defendant's ARDC complaint letter alleged the following. Counsel advised defendant that pleading guilty would "give [defendant] good faith." However, after pleading guilty to the first charge of predatory criminal sexual assault (count I), counsel informed defendant "out of the blue" that he could not plead guilty to the second charge of predatory criminal sexual assault "or [he] would get life" due to a law that counsel had overlooked. "So [counsel] made a deal to drop one of the charges to a class 2 felony of Aggravated Criminal Sexual Abuse." Under this deal, defendant "would agree to a cap of 55 years" and "would not withdraw [his] plea of guilty to charge 1." Defendant pleaded guilty to "charge 2" after counsel said "the judge wouldn't give [him] the full 55 years[,] at most 30 years."

¶ 32    In response to the court's questions concerning his written allegations, defendant stated that counsel had "strongly advised" him to take the plea deal, informing him "the chances of *** getting the full 55 was not likely to happen" and defendant "would most likely get something

10

around 30." According to defendant, counsel did not promise or guarantee him a sentence around 30 years.

¶ 33    Defense counsel and defendant both agreed it was only after defendant had pleaded guilty to count I that counsel realized a second conviction for predatory criminal sexual assault would trigger a mandatory life sentence. Armed with this realization, counsel approached the State and secured a lesser charge, one that would not trigger a life sentence.

¶ 34    At the *Krankel* hearing's conclusion, the court determined there was no need to appoint a lawyer, finding that defendant's claims of ineffective assistance of counsel "fail both generally and fail to show that his counsel was ineffective." The court proceeded to conduct a brief hearing on defendant's amended motion to withdraw his guilty pleas.

¶ 35    *2. Hearing on Amended Motion to Withdraw Guilty Plea*

¶ 36    Defendant, the sole witness at this hearing, testified as follows. He was originally charged with two counts of predatory criminal sexual assault, the first count involving his daughter R.L. and the second count involving his stepdaughter A.C. In discussions with counsel, defendant agreed "it was pretty clear that the State had the evidence that there was sexual penetration of the daughter [R.L.]." On the date he pleaded guilty to count I, defendant was unaware that pleading guilty to a second count of predatory criminal sexual assault would trigger a mandatory minimum life sentence. He thought he might be facing a sentence of "30 years to possibly 120" for the charges as to both victims. With respect to count II, defendant expected a stipulated bench trial and believed the State would be required to show actual penetration with respect to that count. Defendant and counsel had discussed that "perhaps a physical contact with [A.C.] would not constitute legally penetration."

11

¶ 37          Defense counsel argued he made three mistakes in his representation of defendant. First, he advised defendant to plead guilty to count I not realizing that two convictions for predatory criminal sexual assault would trigger a natural life sentence. Second, he initially filed a motion to withdraw guilty plea alleging an excessive sentence, only to later discover that an excessive-sentence claim is not a proper ground for withdrawing a guilty plea. Third, counsel incorrectly informed the court that ineffective-assistance claims needed to be in writing.

¶ 38          The court denied defendant's amended motion to withdraw guilty plea, stating that defense counsel's "performance was fine." It found counsel's first mistake had been "fixed before any harm came to the defendant" and dismissed the later mistakes as irrelevant to defendant's decision to plead guilty. This appeal followed.

¶ 39                                        II. ANALYSIS

¶ 40          On appeal, defendant requests that this court vacate his convictions and guilty pleas and remand for further proceedings. He asserts two bases for this request. First, he argues the circuit court failed to substantially comply with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) at the time of defendant's pleas and, alternatively, defense counsel deprived defendant of the effective assistance of counsel by failing to raise the court's failure to substantially comply with Rule 402 in defendant's amended motion to withdraw his guilty pleas. Second, defendant argues he was denied the effective assistance of counsel where his counsel failed to advise him at the time of his guilty plea to count I that he faced mandatory life imprisonment if convicted of predatory criminal sexual assault involving a second child. We address each argument in turn.

¶ 41                               A. Rule 402 Compliance

¶ 42          Due process requires that a defendant's guilty plea be voluntary and knowing. *People v. Williams*, 188 Ill. 2d 365, 371 (1999). To this end, Rule 402 provides that a court shall not accept

12

a guilty plea without first addressing defendant directly and determining that he understands the nature of the charge, the maximum and minimum sentence prescribed by law, that he has the right to plead guilty or not guilty, and that, by pleading guilty, he waives the right to a jury trial and to confront witnesses against him. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). "Rule 402 requires substantial, not literal, compliance with its provisions." *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009). Even when the circuit court fails to admonish defendant as to a specific provision, it substantially complies with Rule 402 where the record indicates the defendant "understandingly and voluntarily entered his plea." *Id.* The sufficiency of Rule 402 admonishments is subject to *de novo* review. *People v. Stone*, 2018 IL App (3d) 160171, ¶ 14.

¶ 43                                    1. *Count I Plea Hearing*

¶ 44            As to the charge of predatory criminal sexual assault of a child (count I), defendant contends the circuit court failed to admonish him of the nature of the charge, his right to plead guilty or persist in his not-guilty plea, and his waiver, by pleading guilty, of "his rights to a trial, a jury, and to confront witnesses," in violation of subsections (1), (3), and (4) of Rule 402(a).

¶ 45            The circuit court need not recite the Rule 402(a) admonishments verbatim to substantially comply with the rule. *Stone*, 2018 IL App (3d) 160171, ¶ 19. Substantial compliance is satisfied when the record "affirmatively and specifically show[s] that defendant understood all of the components of the rule." *Id.* In ruling on a defendant's Rule 402(a) contentions, we consider the entire record to determine whether the defendant understood the necessary admonishments. *People v. Sutherland*, 128 Ill. App. 3d 415, 419 (1984).

¶ 46            At the first plea hearing, the circuit court informed defendant that it received a proposed order indicating defendant was "pleading guilty to the charge of predatory criminal sexual assault, Count I." It then proceeded to show defendant a written guilty-plea form, which he acknowledged

signing, and which stated that defendant "submits a PLEA OF GUILTY to the charge of Count I Predatory Criminal Sexual Assault," and that defendant "was informed and understand[s] the nature of the charge against [him]." Although the court did not specifically admonish defendant about the nature of count I beyond the name of the charge, the record indicates defendant understood the nature of the charge. During the hearing on his amended motion to withdraw guilty plea, defendant indicated he understood—before the first plea hearing—that count I alleged he committed the act of sexual penetration with his minor daughter R.L. We have no reason, therefore, to doubt the veracity of defendant's plea-form acknowledgement that he understood the nature of the charge against him.

¶ 47        Defendant's plea form also stated, "I understand I have the right to plead not Guilty or to persist in that plea if it has already been made" and "I understand I have the right to plead Guilty and that if I plead Guilty, there will not be a trial of any kind, and that by pleading Guilty, I give up the right to a trial by Judge or jury, and the right to be confronted with the witnesses against me." This language is nearly identical to the language of subsections (a)(3) and (a)(4) of Rule 402. Accordingly, where defendant stated he held a college degree, had read the plea form, and had willingly signed the plea form, his signed plea can only indicate he understood that he had a right to persist in his not-guilty plea and that, by pleading guilty, he was waiving his trial rights. *Stone*, 2018 IL App (3d) 160171, ¶ 20 (defendant's signature on guilty-plea form indicates his awareness of its contents); *Lyons Lumber & Building Center, Inc. v. 7722 N. Ashland, LLC*, 2016 IL App (3d) 140487, ¶ 28 ("It is well-settled law in Illinois that a competent adult is charged with knowledge of, and assent to, a document that he willingly signs."). The record thus rebuts defendant's allegations of Rule 402 noncompliance with respect to his count I guilty plea.

14

Moreover, any ineffective-assistance argument is vitiated because counsel's performance cannot be deficient for failing to raise a meritless issue. *Stone*, 2018 IL App (3d) 160171, ¶ 20.

¶ 48　　　　　　　　　　　　　2. *Superseding Count II Plea Hearing*

¶ 49　　　　　As to the charge of aggravated criminal sexual abuse (superseding count II), defendant contends the circuit court did not comply with subsections (a)(3) and (a)(4) of Rule 402 because it failed to admonish him that he had a right to persist in his not-guilty plea or to plead guilty, and that if he pleads guilty, he would be waiving "his rights to a trial, a jury, and to confront witnesses." The guilty-plea form as to the superseding count II was identical to the form as to count I (save for a handwritten interlineation of the new charge) and defendant's answers to the court's questions were substantially identical to his answers in the first plea hearing. Consequently, defendant's contention fails for the same reason discussed above: the guilty-plea form, signed by an uncoerced college-educated defendant, indicates sufficient compliance with subsections (a)(3) and (a)(4) of Rule 402. See *supra* ¶ 47.

¶ 50　　　　　Defendant also contends the court misstated the sentencing range while admonishing him under Rule 402(a)(2). The court informed defendant he was eligible for an extended prison term between 7 and 14 years. At the hearing, defense counsel identified A.C.'s young age as the basis for extended-term eligibility. See 730 ILCS 5/5-5-3.2(b)(3)(i) (West 2020) (court may impose extended term sentence when victim is under 12 years of age at the time of felony offense). According to defendant, the court failed to realize that an extended term sentence based on the victim's young age would be a double enhancement where the charged offense includes an age element requiring the victim to be under 18 years old at the time of the offense.

¶ 51　　　　　A double enhancement occurs when "a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed."

*People v. Guevara*, 216 Ill. 2d 533, 545 (2005). "Whether a statute contains an impermissible double enhancement is an issue that we review *de novo.*" *Id.*

¶ 52    A defendant may be charged with aggravated criminal sexual abuse under one or more paragraphs within section 11-1.6 of the Criminal Code of 2012 (Code). 720 ILCS 5/11-1.60 (West 2020). Here, the State charged defendant under paragraph (b) of section 11-1.6, which states as follows:

> "A person commits aggravated criminal sexual abuse if that person commits an act of sexual conduct with a victim who is under 18 years of age and the person is a family member." 720 ILCS 5/11-1.60(b) (West 2020).

Meanwhile, the relevant extended-term sentencing provision states as follows:

> "(b) The following factors, related to all felonies, may be considered by the court as reasons to impose an extended term sentence under Section 5-8-2 upon any offender:
>
> ***
>
> (3) When a defendant is convicted of any felony committed against:
>
> (i) a person under 12 years of age at the time of the offense or such person's property[.]" 730 ILCS 5/5-5-3.2 (West 2018).

¶ 53    Here, two distinct "age factors" are at play. The "under 18" age factor is an element of aggravated criminal sexual abuse while the "under 12" age factor is a basis for extended-term sentencing. See 720 ILCS 5/11-1.60(b) (West 2020); 730 ILCS 5/5-5-3.2(b)(3)(i) (West 2018). We decline to combine these two factors into a single, undifferentiated age factor. Under subsection 11-1.60(b), aggravated criminal sexual abuse includes an element requiring the victim to be below the age of 18; whether the victim is above or below the age of 12 is irrelevant to

16

securing a conviction under this subsection. 720 ILCS 5/11-1.60(b) (West 2020). Moreover, the under-12 age group is a distinct subset of the under-18 age group, and the legislature has typically assigned more severe punishments to crimes involving victims under 12 years of age than to crimes involving victims over the age of 12. See, *e.g.*, 720 ILCS 5/11-1.40, 1.60 (West 2020). Accordingly, we find no double-enhancement problem under the superseding count II. The circuit court may impose an extended prison sentence when the victim of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b) (West 2020)) is under the age of 12.

¶ 54   Defendant cites *People v. Milka*, 211 Ill. 2d 150 (2004) and *People v. Ferguson*, 132 Ill. 2d 86 (1989) for the proposition that imposing an extended-term sentence solely on the basis of the victim's age is an improper double enhancement where the victim's age is also an element of the underlying offense. However, neither *Milka* nor *Ferguson* involves underlying offenses that can be triggered when a victim is over the age of 12. *Milka*, 211 Ill. 2d at 186; *Ferguson*, 132 Ill. 2d at 95. In *Milka*, the defendant was charged with predatory criminal sexual assault, an offense which, by definition, can only be perpetrated against a victim below the age of 13. *Milka*, 211 Ill. 2d at 186; 720 ILCS 5/12–14.1(a)(1) (West 1996). Likewise, in *Ferguson*, the defendants were convicted of offenses which, by their elements, can only be triggered if the victim is below the age of 13. *Ferguson*, 132 Ill. 2d at 95.[2]

¶ 55   Here, in contrast, subsection 11-1.60(b)'s age element does not distinguish between victims above the age of 12 and those below the age of 12. Thus, it is within the court's prerogative to impose an extended-term sentence when the victim of the subsection 11-1.60(b) offense is below

---

[2] Defendant Ferguson was convicted of aggravated criminal sexual abuse, albeit under a subsection that can only be triggered if the victim is under the age of 13. *Ferguson*, 132 Ill. 2d at 91-92. Ill. Rev. Stat. 1985, ch. 38, ¶ 12-16(c)(1) ("The accused commits aggravated criminal sexual abuse if: (1) the accused was 17 years of age or over and commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed [.]")

the age of 12. Accordingly, where no double enhancement exists here, the circuit court issued a proper sentencing admonishment under Rule 402(a)(2).

¶ 56        Furthermore, even if this were a case of double enhancement such that extended-term sentencing was improper, the court's Rule 402(a)(2) admonishment does not warrant reversal. Although an erroneous sentencing admonishment calls into doubt the sufficiency of the Rule 402(a)(2) admonishment, nothing about this particular admonishment could have induced defendant to plead guilty. If anything, the possibility of a higher sentencing range would have the effect of dissuading defendant from pleading guilty. Reversal is not required when an inadequate Rule 402 admonishment does not result in prejudice to defendant. *People v. Dougherty*, 394 Ill. App. 3d 134, 139 (2009). Here, the sentencing admonishment did not prejudice defendant in the least.

¶ 57        Additionally, we reject defendant's argument that he was prejudiced by his seven-year sentence based on an extended-term sentence range of 7 to 14 years. The court clearly decided to impose the highest aggregate sentence possible under the parties' partially negotiated plea agreement. In imposing defendant's sentence, it stated, "Maximum I can give is 55. Guess what I'm giving: 55." Moreover, the seven-year sentence was within the normal sentencing range for a typical Class 2 felony: three to seven years. 730 ILCS 5/5-4.5-35 (West 2020). Accordingly, even assuming the impermissibility of extended-term sentencing, the circuit court did not exceed its authority in imposing a seven-year sentence for the superseding count II.

¶ 58        Finally, defendant contends the circuit court failed to admonish him under Rule 402(d)(3), which provides:

> "(d) Plea Discussions and Agreements. When there is a plea discussion or plea agreement, the following provisions *** shall apply:

(3) If the parties have not sought or the trial judge has declined to give his or her concurrence or conditional concurrence to a plea agreement, the judge shall inform the defendant in open court at the time the agreement is stated as required by paragraph (b) of this rule that the court is not bound by the plea agreement, and that if the defendant persists in his or her plea the disposition may be different from that contemplated by the plea agreement." Ill. S. Ct. R. 402 (eff. July 1, 2012).

¶ 59 Here, the parties did not seek the circuit court's concurrence or conditional concurrence to their plea agreement. Accordingly, Rule 402(d) required the circuit court to inform defendant at the time the plea agreement was stated in open court that it was "not bound by the plea agreement, and that if the defendant persists in his or her plea the disposition may be different from that contemplated by the plea agreement." *Id.*

¶ 60 The record does not indicate the court advised defendant as required by Rule 402(d)(3). Although the court ultimately expressed its concurrence to the plea agreement by agreeing to cap the maximum aggregate sentence at 55 years' imprisonment, it did not do so until the very end of the of the January 2021 plea hearing. By this point, it had already found factual basis for the plea as to the superseding count II and confirmed that defendant "still wanted to do this" upon informing him that he was eligible for an extended-term sentence of 7 to 14 years, rather than 3 to 14 years. Nevertheless, "[f]ailure to properly admonish a defendant does not automatically establish grounds for reversing judgment or vacating a guilty plea." *People v. Dougherty*, 394 Ill. App. 3d 134, 139 (2009). "Whether reversal is required depends on whether real justice had been denied or whether defendant has been prejudiced by the inadequate admonishments." *Id.* Here, because the court adhered to the negotiated 55-year sentencing cap, defendant suffered no prejudice by the court's

failure to comply with Rule 402(d)(3). By the same token, defense counsel's failure to raise this issue did not prejudice defendant and does not warrant reversal on ineffective-assistance grounds.

¶ 61      B. Counsel's Failure to Advise Defendant about Mandatory Life Imprisonment Trigger

¶ 62      Next, defendant argues he was deprived of the effective assistance of counsel because his attorney failed to advise him at the time of his guilty plea to count I that he faced mandatory life imprisonment if convicted of predatory criminal sexual assault involving a second child. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "It is defendant's burden to demonstrate that he has received ineffective assistance of counsel." *People v. Lundy*, 334 Ill. App. 3d 819, 833 (2002).

¶ 63      "In order to satisfy the deficient-performance prong of *Strickland,* a defendant must show that his counsel's performance was so inadequate that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Smith*, 195 Ill. 2d 179, 188 (2000). "Counsel's performance is measured by an objective standard of competence under prevailing professional norms." *Id.* Defendant argues his counsel's initial failure to advise him of the mandatory life imprisonment trigger satisfies the deficient-performance prong of *Strickland*. We disagree.

¶ 64      Counsel's initial error was a temporary oversight that he adequately remedied. Upon realizing that a second predatory criminal sexual assault conviction would trigger a life sentence, counsel successfully negotiated for a less serious charge as to A.C. and persuaded the State to dismiss the remaining predatory criminal sexual assault charges. Counsel further negotiated a 55-year sentencing cap to subsume both count I and the superseding count II. In doing so, counsel shielded defendant from the real possibility of a mandatory life sentence. The factual bases as to

20

both girls included a plethora of evidence—testimonial, photographic, and video evidence—for a jury to find defendant guilty of two counts of predatory criminal sexual assault, whether based on sexual contact or penetration. Accordingly, where defense counsel capably redeemed himself, defendant has failed to demonstrate that "his counsel's performance was so inadequate that he was not functioning as the 'counsel' guaranteed by the sixth amendment." *Smith*, 195 Ill. 2d at 188.

¶ 65 The analysis can stop there. However, even assuming deficient performance, defendant has not demonstrated prejudice. "Under *Strickland,* a defendant alleging ineffective assistance of counsel must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Jocko*, 239 Ill. 2d 87, 92 (2010). In a guilty-plea context, a defendant must show "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *People v. Hughes*, 2012 IL 112817, ¶ 63. "A conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice." *People v. Valdez*, 2016 IL 119860, ¶ 29. "Rather, *** 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *Id.* (quoting *Padilla v. Kentucky,* 559 U.S. 356, 372 (2010)).

¶ 66 Here, defendant has not met the reasonable-probability standard for demonstrating prejudice. Notably, defense counsel's error ultimately resulted in appreciably more favorable sentencing prospects for defendant. When he pleaded guilty to count I, defendant believed he was facing a sentence "from 30 years to possibly 120 years" for both girls. Defense counsel, in seeking to correct his initial oversight, negotiated a more favorable range of possible sentencing outcomes: 30 to 55 years. If defendant was willing to plead guilty to count I knowing he was facing up to 120

21

years' imprisonment, then he was certainly willing to plead guilty knowing he was facing no more than 55 years' imprisonment.

¶ 67　　　Still, defendant speculates that, "even if [the] chance was small," trials on all predatory criminal sexual assault counts may have allowed him to avoid a mandatory life sentence. Defendant's speculative claim is unavailing. First, "*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice." *People v. Bew*, 228 Ill. 2d 122, 135 (2008). In view of the extensive factual bases in the record, defendant would have faced a high likelihood of mandatory life imprisonment if he went to trial on all counts of predatory criminal sexual assault. See 720 ILCS 5/11-1.40(b)(1.2) (West 2018). Second, defendant did in fact avoid a mandatory life sentence. The negotiated plea deal eliminated any chance of mandatory life imprisonment by extinguishing the first two iterations of count II. Indeed, the plea deal's potential consequences were objectively more favorable to defendant—by any measure—than the potential consequences of going to trial on the original counts. By defense counsel's own admission, the State "show[ed] *** some mercy" by agreeing to reduce count II to the lesser charge of aggravated criminal sexual abuse. In short, we are not convinced that a decision to insist on trial would have been rational under the circumstances. *Valdez*, 2016 IL 119860, ¶ 29.

¶ 68　　　Accordingly, because defendant has failed to satisfy either prong of *Strickland*, his ineffective-assistance claim must fail.

¶ 69　　　　　　　　　　　　　III. CONCLUSION

¶ 70　　　For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 71　　　Affirmed.